STATE OF MISSOURI, Respondent, v. W. F. SHOTTS, Appellant.

Kansas City Court of Appeals, May 2, 1910.

1. **BILLIARD TABLE: License.** The maintenance, without a license, of a billiard table in a cigar and tobacco store, and permitting persons to play thereon, constitute an offense against sections 432 and 438, Revised Statutes 1899, and it is immaterial whether such players do or do not pay for the use of such table.

2. ————: **Gaming and Gambling.** Ordinarily gaming and gambling are synonymous terms, but not so as used in this statute.

Appeal from Harrison Circuit Court.—*Hon. G. W. Wannamaker,* Judge.

AFFIRMED.

*Wilson & Wilson* for appellant.

*S. P. Davisson* for respondent.

BROADDUS, P. J.—The defendant was tried and convicted on an information charging him with having kept a billiard table without license. The cause was submitted to the court on an agreed statement of the facts the purport of which is that he was the owner of a billiard table which he kept at his business house and permitted persons to play thereon the usual games played on such tables with cues and balls. That his business was that of a merchant and his stock of merchandise consisted of cigars and tobacco; that he also provided for the use of the public without charge a reading table upon which he kept certain monthly magazines and daily newspapers; and that he made no charge, either directly or indirectly, for the use of the billiard table.

The defendant appealed from the judgment of the court. The prosecution was instituted under sections 432 and 438 of chapter 5, Revised Statutes 1899. Section 438 reads as follows:

"Every person who shall keep or permit to be kept or used, any one or more of the tables mentioned in section 432, without having a license therefor shall forfeit and, etc."

Section 432, is as follows:

"The county court shall have the power to license the keepers of billiard tables, pigeon hole tables, Jenny Lind tables, and all other tables kept and used for gaming, upon which balls and cues are used. · . . ."

The information sufficiently charges the defendant with a violation of the statute.

The statute is directed at keepers of billiard and other tables of like description, and is intended to regulate the business of such keepers, and it is also a revenue measure. The language by its terms includes all keepers of tables kept and used for gaming upon which balls and cues are used, with the single exception, provided for in section 440, that it shall not apply to any person having set up such tables in his private residence when used for his own personal use and that of his family.

The fact that defendant made no charge to the patrons of his business as a merchant for the use of his table for playing games of billiards thereon was immaterial. It was permitting the playing of such games by defendant as the keeper of the tables without a license therefor that the statute comprehended. Had he been licensed as such keeper he would have been authorized to have charged for the use of his tables or he could have permitted the use free of charge to his patrons although the statute is silent as to that matter. It was the business the Legislature had in view and not whether the licensee realized any profit from it, yet the presumption would be that no person would go

to the expense of setting up and maintaining for use billiard tables, without he expected some compensation therefor. Although it is an agreed fact, which we are bound to accept as true, but which otherwise is incredible, that defendant received no compensation for the use of his tables, yet he kept one and permitted its use as such in connection with his business as a merchant. As before said it was the business that the Legislature intended to regulate and tax which could not be carried on without a license. On an indictment for keeping a ten-pin alley without a license, it was held, that: "A ten-pin alley at a public watering-place, kept by the proprietor for public use, though used solely for amusement by the guests, without charge to them or profit to himself, is within the prohibition of the revenue law." [Spaight v. State, 29 Ala. 32.]

It is insisted that as no gambling was allowed by defendant on the games played upon his tables, he was not guilty of a violation of the section, as the word gaming as used is synonymous with gambling. Gaming is defined as: "The act or practice of playing games for stakes or wagers; gambling; the playing at any game of hazard." [Black's Law Dictionary.] "In general, subject possibly to a few exceptions, yet not many, the words gaming and gambling in our statutes are similar in meaning." [Bishop on Statutory Crimes, section 858.] Wharton in speaking of the word, says: "'Gaming,' however, implies, when used as describing a condition, an element of illegality; and when people are said to be gaming this generally supposes that the games have been games in which money comes to the victor or his backers. . . . When 'gaming' is spoken of in a statute as indictable it is to be regarded as convertible with gambling, i. e., staking money on a game involving more or less chance." [2 Wharton's Criminal Law, section 1465, B.]

The keeping of a billiard table in a licensed dramshop is the keeping of a gambling device. [R. S. 1899,

sec. 318.] And it is held that betting on a game of pool played upon a billiard table constitutes such table a gambling device. [State v. Jackson, 39 Mo. 420; State v. Dyson, 39 Mo. App. 297.] And these decisions are to the effect that the words gaming and gambling are similar in meaning, and that every person, who shall permit such table "to be set upon or used for the purpose of gambling shall be guilty of a misdemeanor, etc.," and punished under the provision of section 1549, Revised Statutes 1879, now section 2196, Revised Statutes 1899. Notwithstanding the expressions of the courts, law writers and lexicographers, that the words gaming and gambling are similar in meaning we believe they are not so in this instance. If so, then we have a conflict of law in this State, for a person licensed to keep and use a billiard table under the section can permit gaming, and he can also be punished for so doing. Both statutes are *in pari materia* and are not inconsistent when properly construed.

The exception noted by Bishop, supra, as to the recognized meaning of the word gaming, is illustrated by a decision of the Texas court which we think is very just and suitable, where it is said that: "The word 'gaming,' has two significations, one which refers to what is illegal, and the other to what is legal and proper. Where the statutes provide that 'there shall be assessed of each and every person, or firm, keeping a billiard table, an annual direct tax of fifty dollars for each table so kept,' it authorizes any person to keep, for the purpose of gaming, a table, called a billiard table. Gaming is here used in a different sense from gambling." [Wolz v. State, 33 Texas l. c. 336.]

If the argument of defendant be correct no keeper of a billiard table is required to have a license for the purpose, provided it is not used for gambling. The consequence of such a holding would be that the license law would be nugatory as no license could be issued for gambling because prohibited by the statute. It fol-

lows from what has been said that the conviction of defendant was lawful, therefore the judgment is affirmed. All concur.