STATE OF MISSOURI, Respondent, v. JAMES LEAVER, WREN BUGG, and THOMAS CARTER, Appellants.

Kansas City Court of Appeals, June 2, 1913.

1. CRIMES AND PUNISHMENTS: Billiard and Pool Tables: Kelly Pool. If a pool table is used for gambling purposes, it is a gaming table within the meaning of the statute (Secs. 4752 and 4753, R. S. 1909), whether the game played upon it be Kelly pool, poker or craps.

2. ————: Owners of Pool Hall: Permitting Gambling. It is immaterial that the defendants did not gamble themselves. If they allowed the pool tables to be used by their customers in playing games of chance for money or property, they violated the statute (Sec. 4753, R. S. 1909).

3. ————: Information: Language of Statute. An information is good if it charges an offense in the language of the statute.

4. ————: Misconduct of Prosecuting Attorney: Failure to Rebuke. When counsel go outside of the record in their arguments to juries and indulge in assertions of facts that are not relevant to the issues and which are calculated to cause the jury to disregard the real merits of the case, the failure of the trial court to give proper heed to objections of opposing counsel, will constitute reversible error.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*Don C. Carter* and *N. T. Gentry* for appellants.

*E. C. Anderson* and *George S. Starrett* for respondent.

JOHNSON, J.—On information of the prosecuting attorney of Boone county, James Leaver, Thomas S. Carter and Wren Bugg were tried for a violation of section 4753, Revised Statutes 1909. A *nolle prosequi* was entered as to Carter and the jury returned a verdict of guilty as to the remaining defendants, assessing a fine of one hundred and fifty dollars against Leaver and a fine of fifty dollars against Bugg. Motions for a new trial and in arrest of judgment were filed and overruled and both defendants appealed.

The information charged that "James Leaver, Thos. S. Carter and Wren Bugg on or about the 20th day of December, 1911, at the county of Boone, State of Missouri, did unlawfully permit a certain gaming device commonly called a pool table, designed and used for the purpose of playing games of chance for money and property, to be used for the purpose of gaming in a certain building there situate and under the control and in the possession of said James Leaver, Thos. S. Carter and Wren Bugg," etc.

Carter owned a building in the city of Sturgeon in which a pool hall was being conducted and also owned the pool tables, balls and cues and other personal property used in the business. Leaver had leased the building and contents from Carter and was the proprietor of the business. He was in other business which engrossed his attention during business hours and he employed Bugg to run the pool hall during his absence. The evidence of the State discloses that Bugg, while in full charge and control of the place, allowed certain patrons to play a game called "Kelly pool" for money stakes. This game is played on a pool table with numbered billiard balls and cues and a bottle containing very small balls numbered to correspond with the num-

bers on the billiard balls is used at the beginning of a game to assign to each player a particular ball to play. The player who first succeeds in pocketing his ball wins the game and the stakes. Leaver frequently spent his evenings at the pool hall and had knowledge that Kelly pool was being played on the tables for money, but neither he nor Bugg participated in the gambling nor received other remuneration than the usual fee charged for an ordinary pool game.

The offense prohibited by section 4753, Revised Statutes 1909, "is the permitting any gaming device to be used for the purpose of gaming in any house belonging to, occupied by, or under the possession, or control, by anyone . . . if the defendant knowingly permitted the gaming device, described in the indictment, to be used for gaming purposes in his house, then he has violated the statute." [State v. Dyson, 39 Mo. App. 297.]

It is immaterial that defendants did not gamble themselves. If they allowed the pool tables to be used by their customers in playing games of chance for money or property they violated the statute.

Counsel for defendants attack the information on the ground that in omitting any reference to the use of balls and cues and in treating a pool table as, of itself, a gaming device, the information fails to charge a statutory offense. It is argued that sections 4750, 4751, and 4753 are *in pari material,* must be construed together and that a bare pool table does not come within the vicious devices defined in section 4750. We agree with counsel that pool tables are harmless when innocently used; so are playing cards, but either may be used in gaming and it is such use the statutes are designed to suppress. Section 4752, which was enacted in 1909, makes it a misdemeanor "for any person to play for money at any billiard game, pool game, or any other game played upon a table and upon which balls and cues are used."

This statute has reference only to games played with balls and cues and obviously was not intended to restrict the scope of the offenses defined in section 4753. The term "any gaming table" used in the latter statute means any table that may be used for playing games of chance for money or property and the offense consists in using such table "for the purpose of gaming," the word gaming being employed as the synonym of gambling. [State v. Shotts, 143 Mo. App. 346.] If a pool table is used for gambling purposes it is a gaming table within the meaning of the statute, whether the games played upon it be Kelly pool, poker or craps, just as a deck of cards is a gambling device whether used in playing poker, pinocle, or bridge whist for money. In State v. Mathis, 206 Mo. 604, the defendant was convicted on a charge of "setting up and keeping divers gaming tables and gambling devices, to-wit, two poker tables . . . which were adatped, devised and designed for the purpose of playing games of chance for money or property." The court say in the opinion:

"Counsel for defenedant lay much stress upon the fact that the game of poker does not require a table or device of a certain kind, and specially adapted, devised and designed for the playing of the game of poker alone. Nor was it necessary that the table should be *specially* adapted, devised and designed for the purpose of playing poker alone. The statute should not be given any such restricted meaning. It prohibits the setting up or keeping '*any kind of gambling table or gambling device,* adapted, devised and designated for the purpose of playing any game of chance for money or property,' and the inducing, enticing or permitting 'any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played or by means of such table or gambling device,' always putting it in the disjunctive. It makes no difference whether the table on which the game of poker

was played was a gambling device or not; if it was a table, adapted, devised and designed for the purpose of playing any game of chance for money or property, and the defendant permitted any person to bet or play upon such table, he is guilty as charged. That the poker table, so called, was adapted and designed for the purpose of playing games of chance is clearly shown by the fact that games of poker were played thereon, in some of which at least the defendant participated."

We held in State v. Shoots, supra, that "betting on a game of pool played upon a billiard table constitutes such table a gambling device." [State v. Jackson, 39 Mo. 420; State v. Dyson, supra.] It is the betting on a game of chance played on a table set up or used for that purpose that makes the table a gambling device within the meaning of section 4753, and not the character of the game played on such table, and, as we have said, the offense defined by that statute consists of permitting a gaming table to be set up and used for gaming and not of permitting any particular game of chance to be played.

Moreover, the information charges the offense in the language of the statute and the general rule is that an indictment on information charging the commission of an offense created by statute is good if it follows the language of the statute. The rule does not apply in instances where the statute uses generic terms and does not state the offense "with such particularity as to notify a defendant of what he is to defend against." [State v. Ramsauer, 140 Mo App 401.] The present information falls within the rule and not the exception since it notified defendants to defend against a charge embracing all the essential elements and particulars of the statutory offense.

The closing argument of the prosecuting attorney provoked a number of objections from counsel for defendants, all of whish were overruled. Among the

remarks to which objection was made was the following: "Boys can play in there and on up to men as baldheaded as I." Counsel for defendants objected, saying, "there is no testimony that any minors have played in this place." By the Court: "The objection is overruled. Don't interrupt the attorney." Counsel for defendants excepted.

Defendants were not on trial for the offense of perimtting minors to play in their pool hall. The evidence did not accuse them of that offense and if it had, such accusation would have been extraneous to the issues tendered by the information. The prosecuting attorney went entirely beyond the issues of the case in charging defendants with having violated another law, and we assume that he accomplished the only purpose such argument would have, viz., to influence the minds of the jury and prejudice them against the defendants. The rule is too well settled to call for the citation of authorities that counsel must keep within the record in their arguments to juries, and when they fail to do so and indulge in assertions of facts that are not relevant to the issues under investigation and which are calculated to cause the jury to disregard the real merits of the case, the failure of the trial court to give proper heed to timely objections of opposing counsel will constitute reversible error. [State v. Zorn, 202 Mo. l. c. 44; State v. Wigger, 196 Mo. l. c. 103; Bishop v. Hunt, 24 Mo. App. l. c. 377; State v. Upton, 130 Mo. App. l. c. 320.]

The court erred in not sustaining the objection and in not administering a proper rebuke to the offending attorney.

We find no other error in the record but for that noted the judgment is reversed and the cause remanded.

All concur.