## STATE OF MISSOURI, Respondent, v. J. A. TUR-LINGTON, Appellant.

### Springfield Court of Appeals, June 25, 1918.

1. **INDICTMENT AND INFORMATION:** Gaming. Information charging that defendant did unlawfully permit a certain gambling device called a punch board, designed and used for purpose of playing games of chance for money and property, to be used for purpose of gambling in a certain building under his control, charged offense in language of Revised Statutes 1909, section 4753, and was sufficient, although it did not describe gaming characteristics of alleged device.

2. **GAMING:** Punch Board: "Gambling Device." Although patrons of punch board, as condition precedent, were required to purchase a three-cent post card for five cents, there was present the element of chance, the possibility of receiving a knife worth fifty cents or $1.50, in addition to post card, and the device was a "gambling device," within Revised Statutes 1909, section 4753.

3. **CRIMINAL LAW:** Argument and Conduct of Counsel. In prosecution against defendant for permitting a punch board, a gambling device, to be operated in his store, remarks of prosecutor, "That's the way little boys become gamblers," simply called the jury's attention to what they already knew, and was not prejudicial.

4. ———: Judicial Notice: Gambling Instinct. It is common knowledge that gambling instinct possesses many.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Hall & Billings* and *Tribble & Byrkit,* for appellant.

BRADLEY, J.—Defendant was charged by information of the prosecuting attorney of Dunklin county with violating section 4753, Revised Statutes 1909, by permitting a punch-board alleged to be a gambling device to be used or operated in his store building. Upon trial before the court and a jury, defendant was found guilty and fined $50. Unsuccessful in the usual motions for a new trial and in arrest he appealed to this court.

The sufficiency of the information is challenged. Omitting formal parts the information is as follows: "That J. A. Turlington . . . did unlawfully permit a certain gambling device called a punch-board designed and used for the purpose of playing games of chance for money and property, to be used for the purpose of gambling in a certain building there situate, and under the control of him, the said J. A. Turlington," etc.

It is contended that the information is so general in its charges that it does not sufficiently advise the defendant of the offense for which he must go upon trial. In other words it is contended that the information should describe the gaming characteristics of the alleged gambling device. Appellant cites State v. Wade, 267 Mo. 249, 183 S. W. 598, to support his contention regarding the information. The information there challenged was under section 4750 where a number of specific gaming devices are named, followed by a general denouncement of any gaming device of whatever kind or pattern. The information there was an offense falling within the general provisions of the statute, and was charged in language similar to that in the information in the case at bar. The information there was held insufficient because there was no allegation bringing it within the *class* of the enumerated devices. Following the well known rule of *ejusden generis*

200 M. A.—13

it was held in the Wade case that an information charging an offense embraced within the general provisions of section 4750 must contain sufficient averments to show that the offense charged is within the *class* of offenses specifically named. Furthermore it is pointed out in the Wade case that an information containing the averments there challenged would be sufficient under section 4753 known with reference to gaming devices as the misdemeanor section. So to our mind the Wade case instead of supporting defendant's contention conclusively determines that point against him.

The information charges the offense in the language of the statute, and follows approved forms and precedents, and we think is sufficient. [State v. Wade, supra; State v. Leaver et al., 171 Mo. App. 371, 157 S. W. 821; State v. Howell, 83 Mo. App. 198; Kelly's Crim. Law & Pr. (3 Ed.), sec. 953.]

The point is made that the manner in which defendant conducted the punch-board was no offense under the law, and that his instruction in the nature of a demurrer to the evidence should have been given. The evidence shows that the punch-board was a board in which there were a great many holes. In each of these holes was a small strip of paper containing a number. These holes were covered, but the cover was so designed as to indicate exactly the location of each hole. The prizes were knives and post cards. The knives ranged in value from fifty cents to a $1.50, and the post cards were worth three cents each. A small wooden pin was used to punch the covering of the hole. Five cents a punch was charged, and the number on the slip of paper in the hole punched indicated whether a post card or a knife was the reward, and if a knife it indicated what knife. There were no blanks. The purchaser of a punch got a post card or a knife. When the board was first set up a "punch" was sold for five cents; but being advised that there might be less taint of a gamble or game of chance if the post card was sold in advance, this method was

adopted. The post card was sold for five cents, and the purchaser was then entitled to a punch. If he got a knife, he was a post card ahead, as compared with the orginal system. The defendant would buy back for three cents the post card if the purchaser desired to sell it. The defendant testified that the post card cost three cents, and that he bought back a number of them. So in any event the defendant was two cents ahead, if the purchaser who got a post card, did or did not sell it back. The slips of paper in the holes calling for post cards were far in excess of those calling for knives, so that when the entire board was punched there was a margin of gain in favor of the defendant.

Clearly we think such board falls within the *class* of gambling devices. The incentive prompting anyone to take a punch was the chance of getting something of more value than the cost of the chance. The amount of the winner's gain or loser's loss would make no difference, if the chance to win more than was invested was present. It is this *chance* to get something of more value than the amount invested that characterizes the device as a gambling one. Had the post card which was always drawn, except when a prize of more value was drawn, been in fact of the value of five cents so that there would have been no chance for the customer or patron to lose, this would not purge the enterprise of its chance characteristics, because the chance to win more than invested yet remained. This is clearly the law as written in Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842, from which we quote: "The chief element of gambling is the chance or uncertainty of the hazard. It is not essential that one of the party to the wager stands to lose. The chance taken by the player may be in winning at all on the throw, or in the amount to be won or lost, and the transaction should be denounced as gaming whenever the player hazards his money on the chance that he may receive in return money or property of greater value than that he hazards. If he is offered the uncertain chance of getting something for nothing, the offer is a wager since the

operator offers to bet that the player will lose and in accepting the chance the player bets that he will win. Such offer, therefore, is a direct appeal to the gambling instinct which, it is said, possesses every man in some degree, and it is the temptation to gratify the instinct that all penal laws aimed at gambling were designed to suppress.''

That case was a prosecution for the violation of a city ordinance in exactly the same language as the statute under which defendant here was prosecuted, except as to the penalty prescribed. There the defendant set up a slot machine which was operated by putting a nickel or a trade check in the slot. The patron or customer had the chance for five cents to get trade checks good for merchandise of the value of one dollar, and if he failed to get the main prize he was sure to get a package of gum worth two or three cents. There was a mechanical device called the indicator, which indicated in advance whether the customer or player would get gum only, or gum and trade checks. If the indicator indicated gum and trade checks the customer was sure to get the gum and at least two trade checks for five cents, and he had the *chance* of getting the gum and twenty trade checks. That was held to be a gambling device, and on principle we can see no difference in the element of *chance* involved in dropping a nickel in a slot to set in motion a series of mechanical action resulting in an indication of the result of the wager, and punching a paper over a hole in which is a slip of paper indicating the result of the wager. In the one the customer wagers five cents that the indicator will point to something of more value than the five cents, and in the other he wagers five cents that the hole he punches will contain a slip of paper indicating something of more value than the five cents.

In discussing the contention that the slot machine operated as above was not a gambling device, the learned judge made this observation which we think hit the nail squarely on the head: ''In no field of reprehensible endeavor has the ingenuity of man been more

exerted than in the invention of devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions.''

Error is predicated upon certain remarks of the prosecuting attorney in his argument to the jury. In his argument the prosecuting attorney used this language: ''That's the way little boys become gamblers, they get around this and get the idea of getting something for nothing.'' Objection to the use of this language was made, and overruled, and exception saved. The observation is made in Moberly v. Deskin, supra, as appears in the quotation herein that the gambling instinct in some degree possesses every man. Anyway it is common knowledge that such instinct does possess a great number, and such argument could have only the effect of calling to the jury's attention what they already knew. We can see nothing in the language used that would tend to inflame the mind of the jury, and cause them to depart from sober reflection upon the evidence adduced. Indeed we do not see how the jury could have reached any other conclusion under the evidence and the instructions which we think correctly and clearly state the law. That they were not excited to excess, and inflamed to prejudice appears from the penalty assessed. The minimum penalty was assessed, and that was the best they could do for the defendant under the evidence and instructions. The record shows that the defendant is a good man; and never before been in the toils of the law. On the stand as a witness in his own behalf he gave a complete and sensible explanation of his punch-board, and how it was operated. We entertain no doubt but that the

defendant was operating the punch-board in good faith, ignorant of its illegal character, but ignorance of the law will not excuse. Defendant cites State v. Leaver et al., 171 Mo. App. 371, 157 S. W. 821, in support of his contention that the remarks of the prosecuting attorney constitute reversible error. There the defendants were charged under the same section as defendant here is charged with permitting persons to gamble upon ''Kelly pool.'' There the prosecuting attorney said: ''Boys can play in there and on up to men as baldheaded as I.'' This was held to be reversible error. But there the prosecuting attorney charged the defendant in his argument with the offense of permitting minors to play pool. In the case at bar it is different. It was no offense for the defendant to permit boys to be around the punch-board when some customer was ''trying his luck,'' and by the remark the prosecuting attorney made no accusation that defendant had committed some other offense.

We recognize that prosecuting officers must keep within the record in their arguments to juries, and do not sanction elaborate and persuasive moral arguments dehors the record; and reference to supposed acts not competent nor in the record tending to show that the defendant may have done something which might tend to corrupt the youth of the land; but we do not think that the remarks here complained of in view of the whole record, and the result, tended in the least to prejudice the defendant.

Other assignments of error are made, but in them we find no merit. The defendant had a fair and impartial trial, and the judgment is affirmed. *Sturgis, P. J.,* and *Farrington, J.,* concur.