[No. 16364. Department Two. July 28, 1921.]

DWYER & COMPANY, *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

GAMING (10)—DEVICES PROHIBITED—SLOT MACHINES. A machine known as a "silent salesman," containing 3,000 tickets purchasable for five cents each as they appear in the slots of the machine, the large majority of which entitle the purchaser to nothing more than a postal card of the value of one cent, some few of the tickets entitling the purchaser to articles of merchandise of considerably more value, is a gaming device within the inhibition of the Seattle ordinances and the statutes of the state against gaming devices.

Appeal from a judgment of the superior court for King county, French, J., entered November 9, 1920, in favor of the plaintiff, in an action for an injunction, tried to the court. Reversed.

*Walter F. Meier* and *George A. Meagher,* for appellants.

*Robinson, Murphy & Murphine,* for respondent.

TOLMAN, J.—This action was instituted by respondent for the purpose of obtaining an injunction restrain-

[1]Reported in 199 Pac. 740.

ing the city of Seattle and its officers from interfering with the operation of a certain device known as the "Silent Salesman", of which Dwyer & Company is the lessee, and Joseph F. Dwyer, who intervened by permission of the court below, is the patentee and owner. From a decree as prayed for, the city and its officers, who were made defendants, appeal.

Briefly stated, the record reveals the following facts: Joseph F. Dwyer is the patentee, owner and proprietor of the device in question, and Dwyer & Company, a Washington corporation, is the lessee from Joseph F. Dwyer of all rights necessary to enable it to place the machines, with the tickets and merchandise used therewith, in the hands of those who operate places of business where men resort, and where it is likely to be used by the public. Each machine has five compartments or "slots", in each of which is placed a roll containing 600 tickets, numbered from 1 to 600, consecutively, but in inverse order, so that the first ticket drawn from each roll is numbered 600, and the last is numbered 1, and anyone can determine at a glance how many tickets remain upon each roll. Title to the machine remains at all times in Joseph F. Dwyer. Dwyer & Company place the machine with the local merchant, sell him three thousand tickets, and what purports to be $150 worth of merchandise, for $105, and the merchant's profit thereon is $45, or the difference between the $150 obtained from the sale of the three thousand tickets, at five cents each, and the $105 which he pays for the tickets and for the merchandise which is to be delivered to the players of the machine as the tickets are drawn. Each ticket has printed on its face:

"POST CARD 5c

"Purchaser agrees before sale that the complete transaction is for 5 cts. and that no option on, nor interest in the following offer is involved or implied. No

agent has authority to change this agreement. Drawing sales tickets accepts the condition. Copyright 1920.                    Joseph F. Dwyer.''

As the machine stands ready for operation, the first ticket on each roll is in plain view of the one about to operate the device, but all subsequent tickets are concealed from view. As a ticket is drawn from either roll, the next succeeding ticket upon that roll is brought into view, and at irregular intervals, in addition to the printed matter quoted, there is printed with a rubber stamp upon a ticket the name of some article of merchandise worth much more than five cents, such as ''electric heater,'' ''camera'', ''briar pipe,'' ''robe,'' and the like, and these articles or prizes are listed and displayed in proximity to the machine where they will attract the attention of the public and convey the idea that, by operating or playing the machine, one may obtain much more than the worth of his money. Needless to say that, as one approaches the machine, he sees exposed to view five tickets, each in a separate compartment, and each or either of which entitles him, by the payment of five cents, to a post card worth one cent (no prize ticket ever being left in view by the preceding player), but the suggestion is held out that by drawing one of these tickets, he may thereby bring into view, subject to immediate withdrawal upon the payment of another five cents, a ticket calling for a camera, or some article of considerable value; and the record reveals that, in actual operation, it is the custom of each player to buy not one, but three, five or more tickets before beginning to operate the device, in the hope that by buying one or more post cards, at five cents each, he may thereby gain an opportunity to obtain an expensive camera or a handsome pipe, or some other article of considerable value, for a like nominal sum.

The facts as stated supply their own argument, and demonstrate beyond question that, in its practical operation, this ingenious device is intended to, and does, appeal to the gambling instinct or habit, and were there none inclined to take chances in the hope of getting "something for nothing" there would be no tickets sold, and the machine would never be operated.

In no reported case from a court of last resort, so far as we are advised, has this particular device been passed upon, but it is so plainly a gaming device, and as such so clearly falls within the inhibition of our statute, and the ordinance of the city of Seattle, that no authorities are necessary to support the conclusion we here reach.

Remanded and reversed with directions to dismiss the action.

PARKER, C. J., MAIN, and MITCHELL, JJ., concur.