Argued April 15, affirmed May 24, 1927.

## STATE *v.* D. A. RANDALL AND ELMER BENNETT.

(256 Pac. 393.)

**Gaming—Indictment for Gambling for Prizes Held Sufficient, in Absence of Demurrer, to Show Game was Played for "Representative of Value" (Or. L., § 2105).**

1. Indictment for gambling, stating that person winning would receive from proprietors of game "box of candy and/or electric percolator and/or various other articles of representative value," *held* sufficient, in absence of demurrer, to show game was played for "representative of value" within Section 2105, Or. L., prohibiting certain games.

**Gaming—Game of Throwing Balls into Divided Box for Prizes Held "Game of Chance" Notwithstanding Element of Skill (Or. L. § 2105).**

2. Game of throwing balls into box divided into numbered spaces for prizes *held* "game of chance," notwithstanding element of skill, within Section 2105, Or. L., prohibiting playing and conduct of certain games.

**Jury—Permitting Juror Who Satisfied Court He Could Lay Aside Newspaper Opinion to Sit in Gambling Case Held not Error.**

3. There was no error in permitting one to sit as juror in prosecution for gambling who had formed an opinion from newspapers, but who satisfied the court he could lay the opinion aside and try the case fairly.

---

2. Games and devices for gambling, see note in 121 Am. St. Rep. 693. See, also, 12 R. C. L. 714, 716.

Gaming, 27 C. J., p. 1002, n. 19, p. 1022, n. 73, p. 1037, n. 5. Juries, 35 C. J., p. 344, n. 13.

121 Or.—35

From Clatsop: James A. Eakin, Judge.

In Banc.

The defendants were indicted for the crime of gambling, the indictment being as follows:

"The said E. A. Randall and Elmer Bennett on the 21st day of August, A. D. 1926, in the said county of Clatsop and State of Oregon, then and there being, did then and there wilfully and unlawfully play and carry on a game called 'Beano' and-or 'Keno' the exact name being unknown to the grand jurors, played with cardboards, each cardboard bearing various numerical numbers, together with a large square table in the center of which is a box subdivided by small spaces, each space bearing a numerical number. Said table was then and there used by said E. A. Randall and Elmer Bennett for the purpose of stopping or pocketing balls thrown by persons who had then and there paid to E. A. Randall and Elmer Bennett the sum of ten cents for the right to throw one ball into the box containing the numbered spaces, and the said E. A. Randall and Elmer Bennett did then and there give to each person so plying ten cents a cardboard containing five lines of five numerical numbers each, and the person who did then and there hold the cardboard bearing the numbers in any one entire line corresponding to the first filled numbered spaces with balls thrown by any person in said game would then and there win and receive from E. A. Randall and Elmer Bennett a box of candy and-or electric percolator and-or various other such articles of representative value, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The statute, Section 2105, Or. L., is as follows:

"Playing at or Conducting Certain Games. Each and every person who shall deal, play, or carry on, open or cause to be opened, or who shall conduct

either as owner, proprietor, or employee, whether for hire or not any game of faro, monte, roulette, rouge et noir, lanquenet, rondo, vingtum (or twenty-one), poker, drawpoker, brag, bluff, thaw, or any banking or any other game played with cards, dice or other device, whether the same be played for money, checks, credits, or any other representative of value, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $500, and shall be imprisoned in the county jail until such fine and costs are paid; provided, that such person so convicted shall be imprisoned one day for every $2 of such fine and costs; and provided further, that such imprisonment shall not exceed one year.''

The defendants were found guilty and appeal to this court.                              AFFIRMED.

For appellants there was a brief over the names of *Mr. C. W. Robison* and *Mr. Harold Banta,* with an oral argument by *Mr. Robison.*

For respondent there was a brief and oral arguments by *Mr. F. P. Leinenweber,* District Attorney, and *Mr. F. M. Franciscovich,* Deputy District Attorney.

McBRIDE, J.—There is little dispute about the facts in this case. Practically every fact alleged in the indictment seems to have been proven by competent evidence leaving little to be considered here, except whether the facts, alleged and proved, constitute the crime of gambling.

In the month of July, 1926, the defendants rented a storeroom space abutting the street called Broadway, which is the main thoroughfare in the City of Seaside, and opened up a game called beano, keno or tango. The entire front of the place was taken out so that the game, which the defendants were con-

ducting, could be easily seen by the passerby. In the center of the room or storeroom space, which they were occupying, was a large square counter standing about four feet high and six feet on each side used for the purpose of keeping the contestants in said game at an equal distance from the box which was placed in the center of the square formed by this counter. There was placed in the bottom of the box in this square a number of spaces, numbered from one to seventy-five inclusive, which were used for the purpose of pocketing baseballs thrown into said box by contestants in the game. There was a large rack over this box which was used by the defendants to display various prizes for which the contestants were to play. The game was usually started after about ten or more persons had declared their intention to play said game, and each person upon paying the sum of ten cents to the defendants for the privilege or right to enter in said game would receive from the defendants a card bearing numbers of five lines each with five numbers in each line and also a few beans which were used as markers. After all persons, who were to engage in said game, were supplied with the necessary cards, the game would commence in the following manner: Player number one would be given a baseball which he would throw into the box containing the numbered spaces, and the number into which the baseball fell would be called by the defendants; and any person, engaging in said game, whose card bore that number would place a bean on his card over that number and then player number two would be given a ball to throw in a like manner, which was also called and marked in the same manner, and so on until one player would have his card filled with beans over five numbers on his card, either

diagonally, horizontally or perpendicularly. Thereupon the player so filling his card would call beano, keno or tango; then the defendants would give to the lucky player the prize for which he was playing, which consisted principally of one of a number of various articles, such as boxes of candy, electric percolator, electric toaster and various other articles. The game was conducted by the defendants for about a month as herein stated, when the sheriff of Clatsop County ordered the place closed, because he construed it to be a gambling game. The defendants remained closed until about the 20th of August, 1926, at which time they again commenced to operate the same game with a slight change in the manner of operating the box containing the numbered spaces. This box was on a runway and was pushed back and forth from time to time as the players threw the balls toward the box, so as to make the box equidistant from each player at the time he threw the balls, and when ordered by the sheriff to close again, on the ground that it was a gambling game, they contended that the same was not a gambling game. Upon their refusal to close, they were placed under arrest and the present indictment followed.

1. The first objection is that the indictment does not state facts sufficient to constitute a cause of action in that it does not show that the game was played for any representative of value as required by the statute; but, while this allegation is rather awkwardly stated, we think it is sufficient in that it states that the person winning would receive from the proprietors of the game "a box of candy and-or electric percolator and-or various other articles of representative value." In the absence of a demurrer we think that the allegation is sufficient.

2. It is contended that this game depended upon the skill of a player rather than upon any element of chance, and that the articles given to the successful player were merely prizes. It would be difficult to see for what reason a game could be conducted profitably, if prizes of the value of these, as shown by the testimony to have been, were merely given as a reward of skill. It was under every essential element as much a game of chance as faro, poker or any other game played with cards or any gambling device. In all card games there is more or less an element of skill. Take, for instance, the great American game of poker; we have no doubt, if a couple of gamblers sat down to play this game against a couple of ministers, who presumably do not indulge in it, that the ministers would soon be destitute of "chips" and the gamblers' pile augment accordingly. It is true there is an element of chance in poker, and a very large element at that, and there is an element of chance in faro or any other game played with cards, but in any of these there is also some element of skill. So, it appears in this case, where several persons were playing, if a ball thrown by one person happened to fall into a square of another player, it will count for such other player to the same extent as though he had himself thrown it. While it is not a very thrilling form of a game of chance, we think it is undoubtedly a gambling game and a game calculated to stimulate in the minds of young people, especially, a desire to take chances in the hope of obtaining an article of considerable value by risking a very small sum of money. Taking the testimony of the defendants themselves we think the fact, that it was a gambling device within the meaning of the law, is clearly shown. This being the case, the instructions

of the court objected to become of minor importance. Defendants, on the stand, admit every fact which constitutes gambling, and, while the gravity of their offense was not great and the penalty inflicted seems severe, we are nevertheless constrained to hold that the testimony sufficiently indicates that they were carrying on a gambling game contrary to the technical provisions of the law.

3. Another objection was to the qualifications of a juror, who said he had formed an opinion from reading the newspapers, although he knew nothing personally about it, but succeeded in satisfying the court that he could lay aside his newspaper opinion and try the case fairly upon the facts and the law as given by the court. We think he comes within the rule of the statute, and of the very many decisions of this court, and that there was no error in permitting him to sit upon the jury. In consideration of the fact that defendants' own testimony brought them within the purview of the statute, it is unnecessary to consider the objections to the instruction of the court, and the judgment is affirmed.

AFFIRMED.