[No. 21741.  Department One.  March 19, 1929.]

JULIUS D'ORIO, *Respondent*, v. B. D. JACOBS, *Appellant*.[1]

*Bogle, Bogle & Gates, Edward G. Dobrin,* and *Warren Brown, Jr.,* for appellant.

*Roberts, Skeel & Holman* and *Elwood Hutcheson,* for respondent.

TOLMAN, J.—This is an action to recover $202.50, the purchase price of certain Advertoshare game boards, the price and purchase of which are admitted, but, as an affirmative defense, it is pleaded that the goods sold were devices for use and to be used for gambling or lottery purposes, for a gift enterprise or for games of chance in violation of the constitution and statutes of this state and certain ordinances of the city of Seattle; that therefore the sale and purchase was illegal and void and the purchase price is not in law recoverable.

The plaintiff had judgment below for the full amount demanded, and the defendant appeals. The sole question is as to the purpose and use of the game boards.

[1] Reported in 275 Pac. 563.

Probably no one of mature years and reasonable understanding knows less about the game of checkers than does the writer of this opinion. The purpose and use of the boards can therefore be best stated by quoting the findings of fact as made by the trial court. To our uncomprehending minds, there is nothing in the testimony to in any way impeach these findings, which, so far as they touch upon the use of the boards, read:

"V

"That the said merchandise sold to the said defendant consisted of Advertoshare game boards, a true and correct photostatic copy of one of which is in evidence as plaintiff's Exhibit 'A.' That upon the face of each board there appears a regular standard checker board, and the squares used in the checker problem are numbered. Upon the board there are 400 or more holes perforated through the board in each of which there is a small slip of paper, and upon the board is a list of 10 names, and opposite these names appears the color of the checkers, and after every color appear the numbers upon which these respective checkers are to be placed. The customer pays 10c to purchase one of the slips of paper. Upon this slip of paper appears one of the names which appear on the face of the board. Each problem is an ending of a game of checkers which has been partly played. That the customer then places the checkers upon the checker board, as is indicated after the name, which appears upon his slip of paper. Then he is to move both colored checkers—the dark colored checkers to be moved first. If the customer can then move the checkers in such a way that the dark colored checkers win over the light colored checkers the customer solves the checker problem and receives a prize. That the slips of paper which the customer has received, are good and apply upon the purchase price of merchandise, which is advertised on the face of the board. That in all problems that appear upon the board, the dark colored checkers can win if the player moves the

checkers in the proper way. That in every problem, therefore, the dark colored checkers can win over the light colored checkers, if the person playing the game has sufficient skill as a checker player to move his checkers skillfully.

## "VI

"If the player plays the game in good faith and has the dark colored checkers win over the light colored checkers he receives one of the boxes of candy, or other prize, displayed with the board. There is to be displayed with the board a number of special boxes of candy for the purpose of advertising. The slips which the customer has received are receipts for the 10c paid and are good for 10c credit on the purchase price of this special advertising candy displayed, or of a checker book or booklet or other merchandise which the merchant or dealer desires to so advertise, whether or not he solves the problem. If he solves the problem, as indicated above, playing in good faith, he is given an additional box of candy as a prize. For the reason that there is also displayed on the face of the board an advertisement of a checker book containing the solution of the problems on any board as well as a general treatment of the subject of checker playing, and because it is thus possible for any player to memorize any checker problem and be able to win it invariably, the merchant displaying the board reserves the right and option to give or withhold the prize upon the solution of the problem. This is necessary for his protection, and the player is given notice of this option before he pays the 10c. This option is so stated upon the face of the board. But in any event the slip received for 10c is good upon the purchase price of the candy and booklet advertised.

## "VII

"The merchant or dealer arranges to award prizes for correct solutions of the checker problems which accompany the board and are selected by the customer. There are ten checker problems and there are an equal number of each checker problem on each board. Every

checker problem is capable of solution by the exercise of ordinary skill in the application of the ordinary rules and principles of the game of checkers.

## "VIII

"If the customer fails to obtain a correct solution of the problem within a given time which has been arranged previously, the customer receives no prize but he may, if he desires take the problem home, solve it and present a written record of his solution, which solution shall be considered in competition with other solutions of the same problem, and prizes are awarded for the best (3) solutions of each problem, and in case of a tie neatness of presentation is the deciding factor. The object in the competition with other solutions of the same problem is to solve the problem in the smallest number of moves. Each problem is capable of solution in more than one way, each method of solution requiring a different number of moves. There is provided with each board an envelope for the use of the merchant or dealer only, with instructions printed thereon showing the minimum moves for the best solution of each problem to make the dark colored checkers win over the light colored checkers, which the merchant or dealer keeps at hand for ready reference. If the customer obtains a correct solution of the checker problem within a given time which has been arranged previously, he is awarded a prize; and he may also, if he desires, present his solution in writing for competition with other written solutions of the same checker problem.

## "IX

"That the plaintiff, Julius D'Orio, is one of the champion checker players in the country, and is the originator and patentee of said Advertoshare game board, and is the manufacturer and original seller thereof. That the defendant is a retail merchant or dealer in the city of Seattle, Washington, and purchased said boards for use and operation, and the same are being used and operated by the defendant, in conformity with the method and plan of use and operation herein described.

"X

"That the element of skill clearly predominates in the game, and the element of chance is negligible. That the said game boards are not used for gambling or betting, and are not a lottery, nor a gift enterprise, nor a game of chance. That the said game boards are a game of skill and do not violate any of the laws or statutes of the state of Washington or the state constitution thereof, or any of the municipal ordinances of the city of Seattle, Washington."

■ Our statute, Rem. Comp. Stat., §§ 2464, 2465, 2466 and 2472, is as broad and all-inclusive as possible, and the ordinances of the city of Seattle are thought to be, if possible, even broader, and yet, under the statute or the ordinance, as was said in *State v. Wong Took*, 147 Wash. 190, 265 Pac. 459, there must, in order to constitute a lottery, gift enterprise or game of chance, be combined the three elements of a present or a prize, a consideration, and an uncertain or contingent event or a chance. The elements of a consideration and of a prize are admittedly here present, and the question for solution is whether the prize is to be obtained by chance or by skill.

Appellant says that

"Courts, and especially this court, look critically at schemes such as this to evade the provisions of the law, with technical though not practical distinction,"

citing many cases which so hold, and quoting from *State v. Turlington*, 200 Mo. App. 192, 204 S. W. 821, which quotes from an earlier Missouri case as follows:

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes, of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish

no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded diversified, and cunning mechanical inventions.''

Truly, we will examine critically to see whether there is an intent to evade the law, and we have so studied this case. Here, however, we are unable to see such an attempt. This is a penal statute and must be strictly construed, and we find in it no attempt to forbid games of skill or to bar the ordinary chance or contingency which is involved in practically every human endeavor. This is not a device which appeals to the gambling spirit, or such as is likely to engage the interest of the young and inexperienced. To us it would seem to appeal only to experienced checker players who may desire to pit their skill against the expert knowledge of the inventor of the device. The prize seems inconsequential, as compared with the thrill of victory.

Many authorities have been brought to our attention by the industry of counsel, including our own cases of *State v. Danz,* 140 Wash. 546, 250 Pac. 37; *Society Theatre v. Seattle,* 118 Wash. 258, 203 Pac. 21; and *Dwyer & Co. v. Seattle,* 116 Wash. 449, 199 Pac. 740, but we find nothing in any of them (save the two hereinafter mentioned) which seems to meet the point here under discussion, and in none do we find anything which militates against the reasoning in the two cases where this identical device was under consideration.

In *D'Orio v. Startup Candy Co.,* 266 Pac. (Utah) 1037, a case involving practically the identical facts which we have already set out in the findings quoted, the court said:

"From the arguments made by counsel for both parties, we deduce the conclusion that, if the use and operation of the instrumentality described in the stipulation constitutes a game of skill or a game in which skill is a dominating element, the judgment of the trial court should be affirmed. In this view of the question there is but one conclusion deducible, and that is that it is a game of skill. In fact, skill is not only the dominating element, but it appears that nothing whatever is left to chance. The customer or patron of the device plays the game alone. There are 300 holes, any one of which the player may select. These holes contain a slip of paper upon which is the name of a checker problem. There are ten problems which are described on the board. When the player selects a hole and punches out the slip of paper therein, he then knows the problem he has to solve. The slip of paper indicates how the checkers shall be placed on the checker board which is in front of the player. The checkers are divided into black and white. The player plays the black against the white and must win in order to solve the problem. In some of the problems an equal number of black and white checkers are played on the board; in others there are more of one kind than the other. From the limited number of checkers used in each problem and their location on the board it has the appearance of a game which has been partly played. Some of the problems are more difficult to solve than others. This cannot be determined until the player punches out the problem. For this reason it is contended by appellant that here is an element of chance. But it is stipulated by the parties that '*any of said games can be won if the person playing has sufficient skill as a checker player to move his checkers skilfully.*' (Italics supplied) That stipulation, in the opinion of the writer, effectually determines the nature of the game. It is unquestionably a game of skill by agreement of the parties without any element of chance as that term is understood by lexicographers and in cases decided by the courts. The fact that one player may be less skilful than another or that one of the games may be more difficult

than another does not make it a game of chance. If it can certainly be won by a skillful player it is not a game of chance. Checker playing is universally held by the authorities to be a game of skill. The fact that one of the players may be more skillful than the other does not alter the nature of the game. It is nevertheless a game of skill.

"We are of opinion that the use and operation of the instrumentality described in the stipulation and findings was not in violation of section 8162 of the statute, nor was it in violation of article 6, § 28, of the state constitution."

This same device was also before the county court for British Columbia sitting at Vancouver, British Columbia, in a case entitled *D'Orio v. Leigh & Cuthbertson*, and according to the report contained in [1929] 1 W. W. R. 122, the game or problem played upon this device was held to be a game of skill and not such as to offend against statutes prohibiting games of chance. The British Columbia court answers one of the principal arguments advanced by appellant here in the following words:

"The only element of chance, as disclosed by the evidence, is in punching the holes in the first place to obtain the name of the problem to be played. It does not appear that there is any material benefit to the customer or player in drawing one problem rather than another as the same prizes are offered for all problems played. Once it is settled which problem is to be played it is alleged skill or science is required to obtain the desired end. It is apparent that the method of determining the problem to be played is adopted for the purpose of preventing an expert customer or player from voluntarily choosing a problem to play in which he is or has become proficient and that the method adopted in choosing by chance the problem to be played is for the purpose of eliminating this possibility. After the problem to be played is determined by the method above stated it appears that skill, if it is not entirely necessary to win the game,

predominates and the element of chance, if not negligible, is a no greater factor than it is in any game of skill such as bridge.

"Is then the device a violation of the '*Criminal Code*'? Is it a game of chance or of skill or a game of mixed chance and skill?

"I cannot conclude that the element of chance which clearly exists in deciding which problem shall be played has any real connection with the problem itself as and when played. The evidence discloses that skill must be used in working out the problem. The device cannot be such a game as is contemplated in the *Criminal Code.*" (Since affirmed by the B. C. Court of Appeals.)

The reasoning of these cases seems to be sound. We can add nothing. Indeed, nothing more seems to be needed and we are content to follow them.

The judgment is affirmed.

MAIN, BEALS, and HOLCOMB, JJ., concur.