## UNITED STATES v. FRODENBERG.

No. 1197–Cr.

Third Division.

May 18, 1930.

W. N. Cuddy, U. S. Atty., of Anchorage, for the United States.

Harry F. Morton, of Anchorage, for defendant.

HILL, District Judge.

The defendant in this action is charged with conducting a game played with a device known as "Advertoshare" for representatives of value, in violation of section 2032, C. L.A. He was convicted in the justice court for Anchorage precinct, and appealed to this court. The case is submitted for trial by the court without a jury upon stipulated facts and upon briefs.

The Advertoshare is a device of the punchboard variety. It differs from the ordinary punchboard in that, intervening between the punch-out of paper and the possible prize, the player must attempt to solve one of ten designated checker problems, each capable of solution. Which problem of the ten the player is to undertake is determined by the paper punched from the board. According to the stipulation, "If the player *plays the game in good faith*" (italics mine) and solves the problem within the time limit set by the owner of the board "he receives one of the boxes of candy or other prizes displayed with the board." Not mentioned in the stipulation, but appearing prominently on the Advertoshare device submitted therewith, is the statement: "Last sale on board receives Large 5 pound Renown Box Chos." Punches are 10 cents each, and the paper punched out not only names the checker problem to be undertaken, but it purports to be a receipt for 10 cents, and is "good for ten cents credit on the purchase price of this *special advertising candy displayed*." The player pays 10 cents a chance and gets a credit which he can only use on goods selected by the dealer and at the dealer's price. That sort of credit is of little or no value.

Counsel for the defendant cites three cases. D'Orio v. Startup Candy Company, 71 Utah, 410, 266 P. 1037, 60 A.L.R. 338, D'Orio v. Jacobs, 151 Wash. 297, 275 P. 563, 565, and D'Orio v. Leigh & Cuthbertson, Limited (Canadian) 1 Western Weekly Reports, 122. Each of these cases is a suit by D'Orio against the defendant for the purchase price of Advertoshare boards, and the defense

in each case is that the contract for the purchase was based upon an illegal consideration, in that the boards are gambling devices. In each case the court determined that the consideration was not illegal and that the contract was binding. The cases are in point, and each decides that a game of checkers is not a game of chance and not within the definition of a lottery or any statute prohibiting gambling, and each holds that, although the element of chance enters into the use of the Advertoshare and although a consideration is paid by the player and a prize given by the proprietor of the Advertoshare, the success of the player in winning the prize is determined by a game of skill and not by chance.

The case at bar does not charge setting up a lottery in violation of section 2015, C.L.A. I am not, therefore, required to set forth my views as to whether an Advertoshare is a lottery. However, considering that the briefs of counsel in this case discuss it as if conducting a lottery was charged and, further, that before I read the original complaint I read counsel's citations and stipulation as to the facts and arrived at a conclusion upon the lottery theory, I shall express my opinion of Advertoshare in that respect.

I regard this device as nothing more than another clever attempt to disguise a lottery. It is a punchboard, and punchboards are almost universally held to be lotteries. The Supreme Court of the state of Washington considered this device in the case above stated and came to the conclusion that "the prize seems inconsequential as compared with the thrill of victory." Granting the thrill, why the prize? If it is to be considered merely a laurel wreath emblematic of victory, why advertise in special type, as the board does, *its value?*

Comparing the ten problems to be solved and the correct solution thereof as given on the card furnished the Advertoshare owner, I find that three of the ten require nine moves, five by black and four by white; four, eleven; one, thirteen; one, fifteen; and one, twenty-three. Chance certainly decides

which problem the player shall undertake, and his success in solving that problem within the given time necessarily depends not only upon his skill as a checker player, but also very largely upon the complications involved in the problem drawn. Unlike the Washington judge who wrote the opinion in D'Orio v. Jacobs, supra, I have ordinary knowledge of checkers, and I attempted to solve one of the simpler problems, and I doubt that one player in a thousand ordinary players can correctly solve the most difficult of the ten problems within half an hour. It is urged that the time limit may be avoided by taking the problem home and submitting a written solution. At what step that option must be taken by the player I am not informed, but, assuming that he has exercised it and has drawn a very difficult problem, he may never be able to solve it. Chance alone determined his problem, and, if he drew an easy problem and solved it, he can win a prize. If the thrill of success is the main inducement, why submit the solution in the race for this "inconsequential" prize, the race to be then decided by neatness? It is also claimed that, since each problem can be solved, the element of chance is absent. That leaves out the element of time above adverted to and the element of skill. A poor player may not be able to solve any of the problems. Granting that there are players who can solve any of these problems, the dealer or proprietor of the Advertoshare, to meet such a case, reserves "the right to decline to give the prize." This provision is in effect barring experts in the game so that the chance involved in the choice of problems will have the full and intended effect. After all, at least from the dealer's standpoint, the prize is the thing.

If the "thrill of victory" is the trade-inducing feature of this device and the element of chance "inconsequential," all questions as to legality would be obviated, all "ingenuity to do violence to the spirit and thwart the beneficent purposes and objects of laws designed to suppress the vice of gambling" avoided, and trade fostered by simply advertising that with each 10-cent purchase a miniature checker board and checkers would be placed before the purchaser

and he would be allowed a given time within which to solve his choice of ten designated problems.

That Advertoshare in some degree popularizes checkers, I have no doubt. That it may tend to increase the sale of Mr. D'Orio's book on checkers, I have no doubt. But why do dealers agree to pay $200 plus, as in the Washington case, to popularize checkers or sell Mr. D'Orio's 10-cent book? In my opinion the great attraction of the board to ordinary players is based principally on the gambling chance to draw an easy problem or one which the player has solved before and knows he can solve again within the time limit, thereby gaining the prize. Thus this board not only appeals to the gambling instinct, but it offers temptation and reward to the cheater.

■ Despite the specious reasoning urged upon me, I am clearly of the opinion that Advertoshare is a device for carrying on a game of chance, and that, whether a game of chance or of skill, conducting an Advertoshare is a violation of section 2032, C.L.A.

■ Section 2032 was taken from and is identical with the Oregon statute (Or.Laws 1876, p. 39, § 1; Hill's Code, § 1968; Bellinger & Cotton's Code, § 1944; Lord's Or. Laws, § 2105), and the construction given that law by the Supreme Court of Oregon prior to its adoption as the law of Alaska is binding on this court. In State v. Gitt Lee, 6 Or. 425, decided in 1876, the word "device" used in this section was given the following interpretation: "It should appear therefrom [from the indictment] that a 'tangible device' was used, and that it was adapted, devised, and used for the purpose of carrying on or playing a 'banking or other game for money,' etc."

Unquestionably, Advertoshare is a tangible device and is used for the purpose of playing a game for a representative of value. In State v. Randall, 121 Or. 545, 256 P. 393, the Supreme Court of Oregon confirmed the conviction of a defendant charged with a violation of section 2105 by

maintaining a game called Beano or Keno or Tango, played with a device for prizes. It was there, as here, contended that the game depended upon the skill of its players rather than chance. The reasoning of the Supreme Court of Oregon in that case appeals to me as correct and as applicable to the case at bar. I shall therefore give judgment against the appellant and his sureties in his undertaking according to the nature and effect thereof. I find the defendant guilty, and will fine him $50. A formal judgment may be prepared and presented to me.