## F. E. BOATWRIGHT V. THE STATE.

No. 14109.   Delivered April 8, 1931.

The opinion states the case.

*J. H. Martin, Clarence Parker* and *Virgil R. Parker,* all of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Appellant was convicted of a violation of the lottery law, and his punishment fixed at a fine of $100.

Appellant maintained in his place of business an Advertoshare game board. Upon the face of this board appeared a regular standard checker board. Directions accompanying the board read as follows: "This board presents distinct set-ups of checker games partly played out. It calls for varying degrees of skill in playing any one of these set-ups to a finish. These problems may be solved by a greater or lesser number of moves but the solution with the lesser number of moves would be considered the better solution. The games are to be worked out by one person only, always playing the black to win against the white. The merchant holds the key to the better solutions and he may offer a prize or prizes for any or all solutions, fixing his own conditions as to the best, quickest, neatest, etc., solution of any and all problems. Customers may take the problem home and work it out there, each presenting his solution upon completion for competition with other solutions so presented, under such terms and conditions as the mechant may impose as to the shortest solution, shortest time, neatest record, etc. The name of the set-up to be worked is obtained by punching it out of one of the holes in the board. This is done to prevent one from playing only one game in which he or she may have become an expert and in this way take an advantage over others competing for a prize offered by the merchant. There are an equal number of all problems on the board: For example, there are 6 problems on the 600 hole board, each problem numbering from 1 to 100. In each hole thre is a slip of paper having a name and a number

upon it. The name is the name of one of the checker problems listed on the board and the number is used for the identification of solutions. Since one may become skilled in all the games presented, the merchant may exclude him from the right to compete for any and all prizes or may permit him to compete with others under such handicap as will tend to equalize the game among those who are in competition for the prize or prizes. Such handicap must, however, be placed in advance of pay-. ment of the entry fee into the competition."

The checker board is like any ordinary standard checker board in appearance, size, color and general make up, except that the black squares are numbered from 1 to 32. The numbering is for the purpose of making the different set-ups and keeping check on the number of moves of the player. It is seen from the directions above quoted that there are six separate problems. These problems are named as follows:

"Polly—Black 10-11-16; King 9. White 20-24-28; King 4.

"Clara—Black 3; Kings 2-8. White 10-20; King 22.

"Julia—Black 10-14; Kings 16-19. White 17-29; Kings 13-21.

"Flora—Black 9-14; Kings 1-2. White 8-15; Kings 4-22.

"Alice—Black 3-6-22-25. White 17-29; Kings 4-13.

"Nancy—Black, Kings 5-21-30-32. White 22; Kings 8-11-24."

After each name the numbers upon which the checkers are to be placed are designated. There are a number of holes in the board covered with a thin seal. In each hole there is a small slip of paper containing the name of one of the problems the customer is to solve. There are no blanks in any of the holes, each containing the name of some problem to be solved. The customer pays five cents as an entrance fee, punches the seal of a hole and withdraws a piece of paper upon which is written the problem he is to play. Playing alone, he endeavors to solve this problem. For example: if the problem is named "Polly" he places the black and white checkers on the board according to the directions given under the name "Polly." Each problem is an ending of a game of checkers which has been partly played. The player moves both colors— the black checkers to be moved first. If the player is able to move the black checkers in such a way that they win over the white he solves the problem. Appellant offers a box of candy of the value of $1.50 for the best solution of each problem shown on the board. For example, only those drawing the name "Polly" contest for the prize offered for the solution of that problem. After the set-up on the checker board the rules and principles governing regular checker games are observed. If several players are working at the same problem the winner is determind by the smallest number of moves used in making the black checkers free the board of white checkers. The game is over when all the white checkers have been taken off the board by the use of the black checkers. Those drawing the problems bearing the same name may con-

test for the prize. Except for the first move, which is a black checker, all other moves of either black or white checkers are made entirely upon the initiative of the particular player. Appellant has a secret code containing the correct solution of each problem on the board. The solution of the particular problem depends upon the skill of the player, it being possible for the black checkers to win over the white in each of the problems provided for.

Appellant contends that the evidence is insufficient to bring the game within the inhibition of article 654, Penal Code, which provides: "If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

Any scheme for the distribution of prizes by chance, under our statute, is a lottery. Queen v. State, 93 Texas Crim. Rep., 173, 246 S. W., 384; Stanger v. State, 298 S. W., 906. The phrase "game of chance is defined in 27 Corpus Juris at page 968, as follows: "It is a game determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance; a game in which hazard entirely predominates."

Without approving in its entirety the foregoing definition when considered in connection with our statute denouncing lotteries, it is observed that the success of the player in the game under consideration depends upon practice, experience or skill. Other than the ordinary chance or contingency which is involved in practically every human endeavor, the element of chance is not present. The prize is drawn as a reward for the skill of the player, and not by chance. The predominant element in the game is one of skill. There is no more semblance to a lottery in the game than there is the operation of the knife rack described in McRea v. State, 46 Texas Crim. Rep., 489, 81 S. W., 741. In that case, in holding the game not within the inhibition of the statute denouncing lotteries, Judge Davidson said: "The evidence discloses that it was an ordinary knife rack, which consisted of a sloping board with knives stuck in the board and arranged so ·that rings could be thrown and lodged upon the knives, and when the player was fortunate enough to throw one of these rings around a knife, or catch it on a knife, the knife became his property. These knives were, in the main, of a cheap sort, and the rings were sold at a nominal sum—72 for one dollar, 3 rings for 5 cents, 7 for 10 cents, and 18 for 25 cents. This offense does not come within the definition of lotteries defined by our statute, nor of any other definition of lottery of which we are aware. A lottery is commonly understood as a 'scheme for the distribution of prizes by lot or chance, especially a gaming scheme in which one or more tickets

bearing particular numbers draw prizes and the rest of the tickets are blank.' There were no tickets distributed under the scheme as shown in the testimony, but rings were sold, and the thrower of the rings took chances as to whether he could inclose one of the knives by one of the rings so thrown, and the success of the pitcher depended upon his practice, experience or skill. We do not believe it was a lottery."

The device involved in the case under consideration was held not violative of statutes substantially the same as ours in the following cases: Johnson v. McDonald, 132 Or., 622, 287 Pac., 220; D'Orio v. Jacobs, 151 Wash., 297, 275 Pac., 563; D'Orio v. Startup Candy Co. (Supreme Court of Utah), 266 Pac., 1037. The county court for British Columbia sitting at Vancouver, B. C., in O'Orio v. Leigh and Cuthbertson, Limited, according to the report contained in Western Weekly Reports, 1929, vol. 1, page 122, held the identical game involved here to be one of skill and not within the inhibition of the statute prohibiting games of chance. We quote from Johnson v. McDonald, supra, as follows:

"It will be seen from the directions that the prize is drawn, not by chance, but as a reward for the skill of the person claiming the prize. If there is any element of chance at all about the device, it is in the drawing of the problem. Any problem drawn requires the solution of the game of checkers presented by that particular problem. From the directions given with the Advertoshare problem checker boards we learn that the problem is the completion of a game of checkers that has been partially played. The device was invented by a famous checker player. So far as it is humanely possible, the several problems are of equal difficulty. No distribution of prizes is made by chance or lot. Gambling does not have any place in the game as it is intended to be played. The prizes offered are trivial, and do not offer any inducement for one to purchase an opportunity to play the game.

"There is no more resemblance to a lottery in the scheme than there is in a game of billiards or of cards where such games are played in a public place and charges are made for the privilege of using the billiard tables or card tables. The predominant element in the game is one of skill. The game would not appeal to any one who did not like to play checkers. There is no apparent likelihood at all that the game, if played as designed, would cultivate a spirit of gambling."

Being of the opinion that the checker game described by the witnesses was one of skill, and not of chance, it becomes our duty to order a reversal.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.