IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-444-CV





AEROSPACE OPTIMIST CLUB OF FORT WORTH AND


AIR FORCE SERGEANTS ASSOCIATION CHAPTER 1055,




 APPELLANTS


vs.





TEXAS ALCOHOLIC BEVERAGE COMMISSION;


DAN MORALES, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF 


THE STATE OF TEXAS; AND KAY BAILEY HUTCHISON, IN HER 


OFFICIAL CAPACITY AS STATE TREASURER,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 92-03400, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING



 


 




 Aerospace Optimist Club of Fort Worth (the "Optimist Club") and Air Force
Sergeants Association (collectively, "Licensees") sought a refund of taxes paid under protest
on the basis that sections of the Bingo Enabling Act (the "Act") imposing taxes on bingo gross
receipts violated the constitutional provision authorizing bingo in Texas. (1) Licensees appeal the
trial court's grant of summary judgment in favor of appellees, Texas Alcoholic Beverage
Commission, the Treasurer of the State of Texas, and the Attorney General of Texas
(collectively, the "State"). Licensees also appeal the denial of the Optimist Club's motion for
partial summary judgment. We will affirm the trial court's judgment.



BACKGROUND


 In 1979, the legislature proposed a constitutional amendment legalizing bingo. 
Act of May 14, 1979, 66th Leg., R.S., S.J.R. 18, 1979 Tex. Gen. Laws 3221. Voters
approved this amendment (the "Bingo Amendment") at the general election on November 4,
1980. See Tex. Const. art. III, § 47(b). Six months later, the legislature, acting pursuant to
the Bingo Amendment, enacted enabling legislation calling for local taxes on gross receipts of
bingo operations. See Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, § 3, 1981 Tex. Gen.
Laws 85, 87 (Tex. Rev. Civ. Stat. Ann. art. 179d, § 3, since repealed). In 1987, the
legislature amended the Act by adding a state tax on gross receipts of bingo operations. Act of
June 17, 1987, 70th Leg., R.S., ch. 478, § 2, 1987 Tex. Gen. Laws 2085, 2086 (Tex. Rev.
Civ. Stat. Ann. art. 179d, § 2A, since repealed). In 1991, the legislature increased the state
tax from two percent to five percent of gross receipts. Act of Aug. 22, 1991, 72d Leg., 1st
C.S., ch. 5, § 11.02, 1991 Tex. Gen. Laws 134, 183 (Tex. Rev. Civ. Stat. Ann. art. 179d,
§ 2A, since repealed). The legislature repealed all legislation authorizing taxes on gross
receipts in 1993. Act of May 25, 1993, 73d Leg., R.S., ch. 286, § 26, 1993 Tex. Gen. Laws
1325, 1335. 

 In the district court, Licensees alleged that the portions of the Act authorizing
taxes on gross receipts of bingo operations were unconstitutional. See Bingo Enabling Act,
67th Leg., 1st C.S., ch. 11, § 3, 1981 Tex. Gen. Laws 85, 87 (Tex. Rev. Civ. Stat. Ann. art.
179d, § 3, since repealed); see also Act of June 17, 1987, 70th Leg., R.S., ch. 478, § 2, 1987
Tex. Gen. Laws 2085, 2086 (Tex. Rev. Civ. Stat. Ann. art. 179d, § 2A, since repealed). On
this basis, Licensees sought a refund of taxes they had paid under protest. (2) After limited
discovery, the Optimist Club moved for partial summary judgment seeking declaration that the
taxes imposed by the Act were unconstitutional. Thereafter, the State sought summary
judgment affirming the constitutionality of the taxes and denying Licensees' application for
injunction. (3) The district court rendered judgment in favor of the State and denied the Optimist
Club's motion. In two points of error, Licensees seek to appeal both the granting of the
State's motion and the denial of the Optimist Club's motion.



ISSUE


 The question presented on appeal is whether the Texas Constitution permits the
legislature to impose taxes on gross receipts of bingo operations. The constitutional provision 

at issue, article III, section 47(b), provides in relevant part:



The Legislature by law may authorize and regulate bingo games conducted by a
church, synagogue, religious society, volunteer fire department, nonprofit
veterans organization, fraternal organization, or nonprofit organization
supporting medical research or treatment programs . . . . The law must also
require that:


(1) all proceeds from the games are spent in Texas for charitable purposes of
the organizations . . . .



Tex. Const. art. III, § 47(b) (emphasis added). The constitution does not define the term
"proceeds." We must construe the meaning of this provision of the Bingo Amendment in
order to decide whether the statute imposing a tax on bingo receipts is constitutional.



DISCUSSION




I. Standard of Review

 The standards for reviewing a motion for summary judgment are well established:



1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of
law.


2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.


3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.



Nixon v. Mr. Property Management, 690 S.W.2d 546, 548-49 (Tex. 1985). We must determine
whether the summary judgment proof establishes as a matter of law that there is no genuine issue
of fact as to one or more of the essential elements of the non-movant's cause of action and that
the movant is entitled to judgment as a matter of law. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970). Here, the material facts are undisputed. The issue concerns
whether the State demonstrated it was entitled to judgment as a matter of law.

 The Texas Supreme Court has provided guidelines for constitutional interpretation. 
"In interpreting any constitutional provision, we begin with the text of the Constitution. When
there is doubt as to the meaning of the literal text, we must then consider the intent of the people
who adopted the Constitution . . . ." Wentworth v. Meyer, 839 S.W.2d 766, 767 (Tex. 1992). 
In deciding whether a statute is constitutional, we presume the constitutionality of an act of the
legislature; the challenger has the burden to prove otherwise. Texas Pub. Bldg. Auth. v. Mattox,
686 S.W.2d 924, 927 (Tex. 1985). When there are two possible constructions of a statute, one
constitutional and one not, we must adopt the one that renders the statute constitutional. Bullock
v. Regular Veterans Ass'n of the U.S. Post No. 76, 806 S.W.2d 311, 314 (Tex. App.--Austin
1991, no writ) (citing Ohio Oil Co. v. Giles, 235 S.W.2d 630, 637 (Tex. 1950)). Constitutional
provisions should not be construed to lead to absurd conclusions if any other interpretation is
reasonable. Cramer v. Sheppard, 167 S.W.2d 147, 155 (Tex. 1942). 


II. Constitutional Text

 We thus begin our interpretation by examining the applicable constitutional text. 
The literal text of the Bingo Amendment clearly provides for legislative regulation of bingo; 
however, the text contains nothing about legislative taxing power associated with this regulation. 
Generally, unless a constitutional provision expressly prohibits the legislature from taxing specific
objects, the legislature may rightfully tax those objects under its broad taxing powers. See Tex.
Const. art. VIII, §§ 1, 2(a), 17; State v. Wynne, 133 S.W.2d 951, 958 (Tex. 1939), appeal
dismissed 310 U.S. 610 (1940). See also City of Beaumont v. Fertitta, 415 S.W.2d 902, 909-10
(Tex. 1967). Without question, the constitution does not expressly exempt the object of taxation,
gross receipts generated by bingo games, from the legislature's taxing power. Arguably, such an
exemption might be implied. See Shepherd v. San Jacinto Junior College Dist., 363 S.W.2d 742,
743 (Tex. 1962) (instructing that a legislative act is unconstitutional only if a specific
constitutional provision inhibits the legislation, or such is clearly implied).

 We first consider the plain meaning of the constitutional provision in issue. 
Because "proceeds" is not defined, we ascribe to it its ordinary meaning. Ferguson v. Wilcox,
28 S.W.2d 526, 530 (Tex. 1930). The dictionary defines the term "proceeds" as (1) the total
amount brought in; or (2) the net amount received after deduction of any discount or charges. 
Webster's Third New International Dictionary 1807 (1986). Thus, "proceeds" is ordinarily
defined as either the gross amount received or the net amount remaining after deductions.

 Other state courts have recognized this variation in definition. "Proceeds" "`is a
word of varying significance, employed with different meanings.' It may refer to either net
receipts or to gross receipts." Shea v. Davis, 38 N.E.2d. 561, 561-62 (Mass. 1941) (quoting
Morrison v. Palmer, 115 N.E. 419, 420 (Mass. 1917)). The term "proceeds" means that which
finally results from an event, taking into account not only that which is received, but also that
which is incidentally and properly paid out. Commonwealth v. Alexander, 70 N.E. 1017, 1018
(Mass. 1904). The Alexander court, in interpreting a statute requiring the proceeds of an event
to be devoted exclusively to charity, explained that construing "proceeds" to indicate gross
receipts would be too broad; the term must necessarily contemplate the payment of expenses. Id.

 When the Bingo Amendment directs that "all proceeds" must be spent for charitable
purposes, at least three interpretations are possible. If "all proceeds" truly refers to every dollar
collected by bingo operators, the tax on gross receipts, as not specifically directed toward
charitable purposes, would be prohibited by the provision and is unconstitutional. In addition,
if "all proceeds" refers to the net proceeds from bingo after the deduction of operating expenses,
but not gross receipts taxes, the tax on gross receipts is unconstitutional. On the other hand, if
"all proceeds" refers to net proceeds from bingo games after the deduction of operating expenses,
including gross receipts taxes, the tax on gross receipts is constitutional. Because the meaning
of the constitutional text is uncertain, we must attempt to discern the intent of the people who
adopted it. See Wentworth, 839 S.W.2d at 767. 



III. Intent of the People

 The November 1980 ballot gave voters the opportunity to amend the Texas
constitution to authorize the legislature to decriminalize bingo. The ballot provision offered an
amendment that would authorize bingo games conducted by the enumerated religious and
charitable organizations "if the proceeds are to be spent in Texas for those charitable purposes of
the organizations." The ballot made no reference to taxes.

 "When determining the purpose of a [constitutional] provision, we will consider
the evil to be remedied and the good to be accomplished by that provision." Brown v. Meyer, 787
S.W.2d 42, 45 (Tex. 1990) (citing Markowsky v. Newman, 136 S.W.2d 808, 813 (Tex. 1940));
see also Hamilton v. Davis, 217 S.W. 431, 432 (Tex. Civ. App.--Austin 1919, writ ref'd). In this
case, the "evil to be remedied" was selective enforcement of laws prohibiting gambling and
lotteries. (4) See Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 47.02, 1973 Tex. Gen. Laws
883, 966 (Tex. Penal Code Ann. § 47.02, since amended). The "good to be accomplished," or
the overall purpose of the amendment, was thus the legalization of bingo operations to create
uniformity in law enforcement and to prevent otherwise law-abiding citizens from committing
criminal acts by participating in bingo games. 

 The Bingo Amendment requiring "all proceeds" from bingo to be distributed for
charitable purposes prompted the anticipation of a secondary "good to be accomplished"--increased
charity funding. Still, this analysis does not assist the court in determining whether the voters
intended to disallow the legislature's general taxing authority. Because the history of the intent
of the people who adopted a constitutional provision is "often difficult to discern," Wentworth,
839 S.W.2d at 767 (citing Edgewood v. Kirby, 777 S.W.2d 391, 394 (Tex. 1989)), we may look
to other sources for instruction as to the meaning and purpose of the phrase "all proceeds,"
including the legislature's interpretation.



IV. Legislative Interpretation 

 The legislature's practical interpretation of a constitutional term can be a valuable
aid in determining the meaning and intention of that term in cases of doubt. Great S. Life Ins. Co.
v. City of Austin, 243 S.W. 778, 782 (Tex. 1922). Legislative construction can be of substantial
value in constitutional interpretation. American Indem. Co. v. City of Austin, 246 S.W. 1019,
1023 (Tex. 1922). The legislature has equated the constitutional phrase "all proceeds" with the
term "net proceeds" by providing that: "[t]he net proceeds of any game of bingo and of any rental
of premises for bingo shall be exclusively devoted to charitable purposes." Bingo Enabling Act,
Tex. Rev. Civ. Stat. Ann. art. 179d, § 11(d) (West Supp. 1994) (emphasis added). Within this
context, "net proceeds" is defined to mean:



in relation to the gross receipts from one or more occasions of bingo, the amount
that remains after deducting the reasonable sums necessarily and actually expended
for advertising, security, repairs to premises and equipment, bingo supplies and
equipment, prizes, stated rental, . . . personnel . . . , food, beverages, janitorial
services and utility supplies and services, license fees, gross receipts tax . . . .



Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, § 2(10)(A), 1981 Tex. Gen. Laws 85, 86 (Tex.
Rev. Civ. Stat. Ann. art. 179d, § 2(10)(A), since amended) (emphasis added). (5) The legislature
thus intended gross receipts taxes to be one of the expenses deducted before net proceeds were
calculated. Id.

 Even though Licensees point to repeated assertions by various individual members
of the legislature during debate of the proposed constitutional amendment, they do not contend
that every dime from bingo revenues must go to charity. They recognize that reasonable
expenditures for operating expenses, prizes, rental, overhead, and the like lawfully must be paid
from the gross receipts of bingo operations. We agree. We hold that the phrase "all proceeds"
as used in the Bingo Amendment means net proceeds after payment of reasonable, incidental, and
necessary expenses. Any other construction would be unreasonable. Nothing suggests that the
drafters of the amendment or the voters intended bingo operators to seek outside sources of
revenue in order to conduct bingo operations.

 Nevertheless, appellants contend that gross receipts taxes are not one of the
expenses properly payable, and that the imposition of the tax violates the constitution. Their
argument is circular, however, in that it is based upon their literal construction that "all proceeds"
means all proceeds and, therefore, not one cent for tax. The issue left for us to determine is the
constitutionality of the legislature's inclusion of the gross receipts tax as an expense to be deducted
before net proceeds can be calculated. 



V. Gross Receipts Tax 

 Texas courts have addressed the propriety of treating taxes as expenses to be
deducted from gross receipts in terms of determining gross profits and calculating net profits. Net
profits, like net proceeds in the context of bingo operations, are what remain after deducting from
total receipts all expenses incurred in carrying on a business. See R.A. Corbett Transp., Inc. v.
Oden, 678 S.W.2d 172, 176 (Tex. App.--Tyler 1984, no writ) (citing Mangham v. Hall, 564
S.W.2d 465, 469 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e)). In the context of gross
and net profits, case law establishes two links between taxes and expenses. First, Texas courts
consider taxes to be expenses. See Rubin v. Gilmore, 561 S.W.2d 231, 235 (Tex. Civ.
App.--Houston [1st Dist.] 1977, no writ) (stating that regular expenses of a night club business
include the gross receipt taxes owed from the sale of mixed beverages); see also R.A. Corbett,
678 S.W.2d at 175. Second, Texas courts consider taxes to be the kind of expenses that may be
deducted from total receipts before net profits are calculated. See G & W Marine v. Morris, 471
S.W.2d 644, 647 (Tex. Civ. App.--Beaumont 1971, no writ) (quoting Dealers' Granite Corp. v.
Faubion, 18 S.W.2d 737, 739 (Tex. Civ. App.--Austin 1929, no writ)). 

 Similarly, keeping in mind that the legislature may tax under its broad taxing
powers unless the constitution prohibits the legislature from doing so, we hold that the legislature
may impose a tax on the gross receipts of bingo game operations and that the Bingo Amendment
to the Texas Constitution neither expressly nor impliedly prohibits the legislature's power to tax
gross receipts from bingo games. 



CONCLUSION


 We conclude that article III, section 47(b) of the Texas Constitution does not
prohibit taxes on gross receipts of bingo operations. Therefore, we hold that the Bingo Enabling
Act's imposition of taxes on bingo gross receipts was constitutional. Consequently, we overrule
Licensees' two points of error and affirm the trial court's grant of the State's motion for summary
judgment.






 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: November 2, 1994

Publish
1.   Originally, five other parties joined Licensees as plaintiffs in the suit. These five parties
non-suited their claims and were dismissed more than five months before any motions for
summary judgment were filed.
2.   The Optimist Club sought recovery of $2,170.28; the Air Force Sergeants Association
sought recovery of $2,168.32. See Tex. Tax Code Ann. §§ 112.051-.060 (West 1992 &
Supp. 1994).
3.   The State also sought summary judgment denying Licensees' class certification and
limiting the class to only those who had fulfilled all of the requirements that Texas statutes
impose preliminary to filing a tax protest.
4.   Before the Bingo Amendment, article III, section 47 of the Texas Constitution required
the legislature to pass laws prohibiting lotteries. See Tex. Const. art. III, § 47 (1876,
amended 1980). Under Texas law, bingo is considered a lottery. See Boatright v. State, 38
S.W.2d 87, 89 (Tex. 1931) (defining lottery as any scheme where the elements of
consideration, prize and chance are present); see also Tex. Penal Code Ann. § 47.01(6) (West
1994). Therefore, until 1980, the operation of bingo games in Texas was illegal. 
Nevertheless, many community law enforcement officers permitted bingo games sponsored by
religious and non-profit organizations. See House Study Group Special Legislative Report,
S.J.R. 18, 66th Leg. 21 (1980). 
5.   The legislature also defines "net proceeds" in relation to the gross rent received for the
use of bingo hall premises, fixtures, or equipment by licensed bingo operators. See Bingo
Enabling Act, Tex. Rev. Civ. Stat. Ann. art. 179d, § 2(10)(B) (West Supp. 1994). "Net
proceeds" remain after the deduction of "reasonable sums necessarily and actually expended
for janitorial services and utility supplies directly attributable to the use of the premises,
fixtures, or equipment. . . ." Id.