## J. WRIGHT SMITH V. THE STATE.

No. 20063. Delivered March 8, 1939.
Rehearing Denied April 26, 1939.

The opinion states the case.

*Leonard Brown,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Appellant was charged in the County Court at Law No. 1 of Bexar County by complaint and information

with unlawfully establishing a lottery, and disposing of certain personal estate, to-wit: a check of the value of $400.00 in United States money, to one Matt E. Dugosh by said lottery, and upon a trial before the court he was found guilty as charged and fined the sum of $100.00.

The scheme utilized in the distribution of this money was as follows: Appellant organized what was called a "Noah's Ark" which was based upon the issuance of stamps upon which there was depicted the likeness of some animal, possibly said to have been contained in the Ark of Noah at the time of the Biblical flood. Any merchant who desired to join this "Noah's Ark" was charged a fee, upon the payment of which fee to appellant such merchant was given a number of the stamps bearing the image of some animal, as well as a card with spaces thereon sufficient for the inclusion thereon of ten such stamps. This card had a place at the bottom thereof for a signature and address of the person who had placed thereon such stamps. The stamps were obtained by the exhibition and surrender to any merchant or dealer who was a member of this "Noah's Ark" organization of certain evidences in the shape of bottle tops, wrappers, cartons or containers of any commodity that was sold by any member of this organization. Some such wrappers, containers, etc., would be good for more than others, governed by the price of the commodity that was originally contained in such containers. When the card had been filled with ten such stamps, the person holding same would sign his name thereto, and give his address thereon, and deposit the same in a receptacle which was to be found in every place of business of a member of the organization. All these cards would be then gathered up by appellant or his agents at a stated time and brought to a central point and placed in a large container, and two negroes would thoroughly mix these cards up, and then a blindfolded child would draw one card therefrom, and the fortunate person whose name was signed thereto was the one who drew the grand prize, it being a check for $500.00, less tax of $100.00, eventuating in a check for $400.00 to the winner —a further rule in such organization being that any person who may find any of these wrappers, containers, etc., may take the same to any member's place of business and receive the allotted number of stamps therefor, or any person who makes a facsimile of any such stamps, may apply at any of these member locations and obtain a card to which they may affix such facsimiles and thus become eligible for this grand prize.

Our Constitution, Art. 3, Sec. 47, says: "The Legislature

shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, x x x," and under this mandate the Legislature passed Art. 654, Penal Code, which provides that: "If any person shall establish a lottery, or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred dollars nor more than one thousand dollars."

On account of the fact that a lottery is no further defined by statute, it is necessary that we ascertain its definition through common usage, or the ordinary definition of what constitutes the same. A fair definition of a lottery is found in the holding that it is necessary, in order to establish a lottery, that three things concur: (1) There must be a prize; (2) the ownership of such prize must be arrived at by chance, and (3) there must be some consideration moving from the recipient of such prize to the donor of such prize. All these three necessary constituents must be present before the establishment of a lottery is shown. That the first two elements of such lottery are here present is admitted in appellant's brief, the only point at issue being whether a consideration has moved from Mr. Dugosh, the recipient of the prize, to the donor thereof. Bearing in mind that a consideration may move either directly or indirectly from the person receiving the prize to the donor thereof, we are impressed with the fact that the consideration for the entering into such a contest for this prize came indirectly from the hands of the merchant who joined the "Noah's Ark" and paid appellant a license fee therefor, thus furnishing the consideration for all the participants who entered such contest from his store or place of business. The appellant testified: "The company (Noah's Ark) sells the picture stamps and cards to merchants, for which the merchants pay to the company a license fee." He also estimates that about one per cent of the cards contain fac-simile pictures of the stamps, and that they have the same value in the drawing that stamps given in exchange for an original wrapper and container would have.

That a consideration may be furnished either directly or indirectly by the person who participates in the drawing, we have held in the Cole case, 112 S. W. (2d) 725, and the basis of this doctrine is discussed in the concurring opinion therein.

We think it clearly appears herein that appellant received a fee from the 145 merchants and dealers who paid him a license fee and joined his "Noah's Ark" organization, and that the payment of such fee operated as a consideration for the entering into the drawing contest of all persons who came to such

dealers' place of business and requested a card or a stamp for the purpose of entering this contest. That this license fee was the payment of a consideration moving indirectly from the contestant and directly to the supervisor or owner of this scheme. Moving indirectly, it may be for the benefit of the contestant through his merchant or dealer who also received a benefit therefor, presumably at least, in the advertising that he was obtaining as well as playing upon the natural cupidity of mankind to obtain something for nothing, and thus moving it completes the trinity of a prize arrived at by chance, and based upon a consideration, not only given by the contestant but received by the donor.

Let it be said for argument's sake that if all the dealers or merchants who had paid their license fee and joined this organization should decide to use these stamps and cards themselves, and give out none to their customers, and should utilize them by signing their own names thereto and placing same in the receptacle from which the drawing was to be had—could it be successfully said that there had been no consideration paid to the donor of the grand prize for such stamps and cards? We think not, and had there actually not been such a consideration paid to him, we feel safe in making the assertion that no prize would have been present. This is just another lottery scheme, pure and simple, and as such is denounced by the statute. So believing, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, JUDGE.—Appellant, in his motion for a rehearing, insists that we erred in holding that the facts in this case show that appellant operated a lottery, because there was no consideration moving from the recipient of the prize to the donor. It is quite clear to us from the record that each business establishment which contributed a certain amount of money in order to join this "Noah's Ark" and by whom the prize is paid, receives a card or cards and stamps symbolic of some animal. These cards are furnished to the merchant or business establishment, and by them distributed to customers or others who come to the establishment with wrappers, cartons, or containers of commodities which are sold by any member of the "Noah's Ark." It is obvious that the dealer, merchant or business establishment not contributing to the prize, did not receive any card or stamp for distribution. Consequently, parties desiring to secure a chance at the prize would necessarily have to go to such merchant or business establishment as had contributed

to the general fund. As a result, the good will and patronage of the person favored with the cards is secured. This patronage whatever it may be, is given in exchange for cards and stamps, which is an indirect benefit to the operator of the scheme, and enables him to continue his game of chance. It is a bait handed out to the gullible as an inducement to become customers of the dealers or merchants subscribing to the plan.

We think a proper disposition was made of the case on original submission. The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.