

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann
P R~~XXXXXXXXXX~~XXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Thomas R. Chandler
County Attorney
Robertson County
Franklin, Texas

Opinion No. O-1858

Re: Whether or not
operation of
"Moovy-Award"
plan by local
theatre constitutes
a lottery

Dear Sir:

We have for reply your letter of January 24, 1940, requesting the opinion of this department as to whether or not the operation of a "Moovy-Award" scheme by a local theatre constitutes a lottery and as such stands condemned by the Penal Code of this state. The plan is described in your opinion to Mr. George Chatmos, owner of the Chatmos Theatre, Hearne, Texas, as follows:

"Approximately two weeks ago, you requested me for an opinion on whether or not a copyrighted plan, known as 'Moovy-Award,' would come within the prohibition of our lottery Statutes. At that time you left me the proposed rules and regulations governing such plan or contest and a sample sealed envelope containing the question or problem to be solved by a person or persons who may have had his name signed to same, if such person is present or whose presence can be obtained, when same has been drawn on some night to participate.

"Said rules and regulations are as follows:

"(1) Each patron may sign only one sealed entry blank (envelope.)

"(2) Each entry blank (envelope) must be signed in the presence of a theatre attendant and must not be opened. A broken seal will serve to disqualify the person whose name appears on this entry blank.

"(3)  Each entry blank contains a concealed question or problem.

"(4)  All signed entry blanks are kept in a locked container.

"(5)  On the night designated by this theatre as 'MOOVY-AWARD NITE,' the container holding the signed entry blank will be unlocked and opened and some designated person will select at random one or more of the entry blanks in accordance with the number of awards to be made on that night.

"(6)  If the person whose entry blank is selected is present, or at any other place so designated by the theatre and can correctly answer the question or problem contained in their signed entry blank within a reasonable length of time they will receive the award that has been announced in advance by the theatre.  All questions must be answered to the satisfaction of the judge or judges whose decision shall be final.

"(7)  Should the participant fail to answer the question or problem correctly to the satisfaction of the judge or judges they shall not receive the award.  Awards are to be made solely upon skill and knowledge.

"(8)  If the participant whose entry blank is selected fails to answer within a reasonable time when their name is called then that entry blank is to be placed back unopened in the container.

"(9)  In all cases where the entry blank has been opened, whether the question or problem was correctly answered or not, then this blank shall be destroyed and in order that participant may enter again it will be necessary for him to sign another sealed entry blank.

"  dition to the above printed rules and regula  you inform me that any and all persons m  in the contest, by only signing  address on the sealed envelope  g, or being required, to pay any fee or consideration therefor; and that when, and

if, said name is drawn that it would not be necessary for the person named to be a paid customer of said theatre on the night of the drawing or at any other time in order to qualify to enter the contest. Such person named on the envelope drawn, if present or on the outside of the theatre when his name is called, and answers by appearing within a reasonable time thereafter, may participate.

"You also inform the writer that a prize or prizes will be awarded the person or persons solving said question or problem on the night in question; said prize or prizes shall be made in money or merchandise."

Section 47 of Article III of the Constitution of Texas reads:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this state, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principal, established or existing, in other states."

Pursuant to such command the Legislature passed Article 654 of the Penal Code, which reads as follows:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than One Hundred ($100) Dollars nor more than One Thousand ($1000) Dollars; or if any person shall sell, offer for sale or keep for sale any tickets or part tickets in any lottery, he shall be fined not less than Ten ($10) Dollars nor more than Fifty ($50) Dollars."

In City of Wink vs. Griffith Amusement Company, 100 S. W. (2d) 695, (Tex. Sup. Ct.) the court said:

"The State Penal Code does not define a lottery, but our courts have interpreted it in accordance with public usage, to mean a scheme or plan which provides for a distribution of prizes by change among those who have paid, or agreed to pay, a consideration for the right to participate therein. 28 Tex. Jur. p. 409, Sec. 2, and cases cited in the notes."

This department has on several occasions passed on the question of what constitutes a lottery, holding in

(1) Opinion O-428 to Honorable Clint A. Barham, County Attorney, Erath County, dated April 26, 1939, that a number system used by a theatre where each seat in the theatre is numbered and a ticket is selected or drawn from a number of tickets containing all the numbers on the seats and a money award or other thing of value is given to the person sitting in the seat that has a corresponding number with the number drawn is a "lottery" and the operation thereof is a violation of Article 654 of the Penal Code.

(2) Opinion O-967 to Honorable Tom Seay, County Attorney, Potter County, dated June 14, 1939, that a scheme whereby, in substance, a theatre owner gives a prize to some patron of the theatre present after a drawing from which some patron's automobile license number may be selected, under the facts presented, constitutes a violation of the lottery laws of this state.

(3) Opinion O-1174 to Honorable Robert S. Cherry, County Attorney, Bosque County, dated August 10, 1939, that it is a violation of the law for the merchants of a given town or community to give their customers tickets with each purchase of merchandise from them, which tickets are good for chances upon merchandise or money given away at drawings, held periodically in the said town or community.

(4) Opinion O-1200 to Honorable Robert F. Peden, Jr., County Attorney, Matagorda County, dated August 12, 1939, that the "Aces Quiz Night" scheme or plan (under the facts stated to this office) is a "lottery" and in violation of Article 654 of the Penal Code of this state.

(5) Opinion O-1329 to Honorable Jack Borden, County Attorney, Parker County, dated September 8, 1939, that a scheme whereby, in substance, a theatre buys the fingerprints of a citizen of the community

by selection of one fingerprint from the files
of the theatre, is a violation of the lottery
laws of this state.1

(6) Opinion O-1336 to Honorable Paul T.
Holt, County Attorney, Travis County, dated
September 18, 1939, that a scheme whereby, in
substance, a "suit club" gives credits in
trade to winning contestants for completing
a sentence, etc., constitutes a violation of
the lottery laws of this state.

(7) Opinion O-1789 to Honorable Andrew
Patton, District Attorney, Dallas County, dated
December 22, 1939, that a theatre program
featuring the "Doctor I. Q." radio broadcast
over a network is not a violation of the lot-
tery statutes of this state.

In the case of Griffith Amusement Company vs.
Morgan, 98 S. W. (2d) 844, it was held that the elements
essential to constitute a lottery are (1) a prize in money
or thing of value; (2) distribution by chance, and (3) pay-
ment, either directly or indirectly, of a valuable considera-
tion for the chance to win the prize. See also City of Wink
vs. Griffith Amusement Company, supre; Featherstone vs.
Independent Service Station Association, 10 S. W. (2d) 124;
Peak vs. United States, 61 Fed. (2d) 973; Grant vs. The
State, 112 S. W. 1068. In State vs. Randall, 41 Tex. 296,
and Holman vs. The State, 47 S. W. 850, it was held that
any scheme for the distribution of prizes by chance is a
lottery. Accordingly, the "Bank Night" scheme (City of Wink
vs. Griffith Amusement Company, supra) the "Buck Night"
scheme (Robb and Rowley, et al vs. The State, 127 S. W. (2d)
221), and the "Noah's Ark" scheme (Smith vs. The State, 127
S. W. (2d) 297) have all been held to be lotteries.

We take the liberty of quoting again from your
opinion to Mr. Chatmos as follows:

"As to the second element in the crime
of lottery, that is, the award or distribu-
tion or the prize or prizes by chance, will
say that the act of drawing of the sealed
envelope upon which is subscribed the name of
the 'lucky' person, and his address, is in
itself a chance, unless the same is offset by
the 'chance' of the named person's presence
and solve the question or problem contained
in the sealed envelope bearing such persons name.

"As has been stated by your and according to the rules and regulations stipulated the second element of the crime of lottery is not present, in that the prize is awarded and made solely upon the knowledge and skill of the person whose name appears on the sealed envelope in the solution of the question or problem therein contained, even though the person's name was selected, by chance, that is, by drawing such envelope from a container." (Citing Boatwright v. State, 38 S. W. (2d) 87.)

We regret that we cannot concur with you in this position, and this department has under similar facts ruled adversely to your contention. In Opinion O-54 to Hon. Renfro Speed, County Attorney, Freestone County, Fairfield, Texas, dated November 21, 1939, the theatre selected a patron as "movie critic" by a drawing, and his duty was to attend and criticize pictures for which he was paid a cash award. In that opinion it was held that the plan constituted a lottery, and we quote from that opinion as follows:

"It may be contended by some that the theatre operator has conceived an effective escape from the lottery laws by providing that the person designated 'movie critic' must actually attend the pictures and must actually criticize, for which criticism he will be paid the grand award in cash. We do not believe the Legislature intended to enact a statute which might be evaded by such subterfuge, and this department has heretofore ruled adversely to similar contentions. In Opinion O-1329, dated September 7, 1939, the theatre operator sought to sidestep the lottery by 'purchasing' the fingerprint of the winning patron, yet under the particular facts the scheme was held to constitute a lottery. Likewise, in opinion O-1336 of this department dated September 18, 1939, in which a 'suit club' was held to constitute a lottery, the fact that contestant was compelled to write a twenty-five word statement telling why he liked the brand of clothes in question availed the proprietor nothing in escaping the condemnation of Article 654 of the Penal Code."

Under the facts presented in opinion O-1200 of this department to Honorable Robert F. Peden, Jr., County Attorney, Matagorda County, Bay City, Texas, dated August 12, 1939, the theatre conducted a "quiz night" and patrons received prizes depending upon their ability to answer certain questions, the patrons receiving the questions entitling them to awards if correct answers were given, as a result of chance. This scheme was held to constitute a lottery.

The facts involved in opinion O-1789 of this department to Honorable Andrew Patton, District Attorney, Dallas County, Texas, dated December 22, 1939, are distinguishable. There it was held that a theatre program featuring the "Dr. I. Q." radio broadcast over a radio network is not a violation of the lottery statutes of this State. However, in that situation, all patrons of the theatre were entitled to participate by answering questions if they desired, and no one was selected to participate as a result of drawings by lot or chance. The chance element was not present.

Likewise, we believe that the case of Boatwright vs. State, 118 Tex. Cr. R. 381, 38 S. W. (2d) 87, cited in your opinion, is distinguishable from the scheme presented in your letter. In that case the Court of Criminal Appeals held that a punch board wherein were placed different checker problems, the same to be completed by the participant after paying a fee for the privilege of playing, did not constitute a lottery, even though prizes were awarded those working out the best solutions. However, the court emphasized the fact that the only element of chance there invovled was the nature of the checker problem to be drawn. There any person might participate in the game and every person who purchased a checker problem stood on an equal footing. We believe that the right to the opportunity of answering the questions or solving the problems under the facts involved in your letter is a valuable right which accrues to a patron only as a result of chance,--that is, by having his sealed entry blank drawn and selected. Thus, the distribution of the prize to such fortunate patron is a result of chance.

We concur with you in the belief expressed in your opinion that the mere fact that a person may participate although he is not present in the theatre if his name is called, and he presents himself within a reasonable time, is not sufficient to relieve the plan of the third element of a lottery; namely, the furnishing of consideration.

We quote from the opinion of Judge Hawkins in Cole vs. State (Ct. Cr. App.), 112 S. W. (2d) 725, as follows:

"The undisputed facts proven by the State show that no one present at the theatre on 'Bank Nite' was entitled to have their name or number participate in the drawing for the prize unless their names were registered in the 'Bank Nite Book,' for which registration no charge was made. Those absent from the theater on said night but whose names were likewise registered without charge also participated in the drawing. So it will be seen that no direct consideration passed from the participants to appellant. It occurs to the writer that the vice in the scheme--the things which make it a subterfuge--are the following: The party who is in the theater is immediately present to identify himself if perchance the number corresponding to the party's name on the book be drawn. If a number be drawn which corresponds to the name of some one not in the theater, it appears to be a remote pro- bability that such a one will be able to appear in the theater and identify himself within the short time allowed, and no possibility for such identification if the holder of the number drawn is not in the immediate vicinity of the theater. Therefore, it appears plain that those who have paid admission to the theater are in a more favorable position to claim the prize than one on the outside, although the names of both have been registered in the book without charge. The practical working of the scheme is bound to be known to all patrons of the theater. If the prize would have gone to some one not present but remains unclaimed, it is pyramided on the amount of the prize for the next 'Bank Nite' drawing. The conditions naturally excits or increase a desire on the part of those eligible by reason of their names being registered to pay the admission price to the theater in order to be more favorable situated to claim the prize on a 'Bank Nite' drawing, and in this way an indirect consideration does move from them to the operator of the scheme and furnishes the third indispensable

element of a lottery."

We believe that the essential elements of a lottery are presented by the facts set forth in your letter. The theatre provides merchandise or money for those patrons fortunate enough to have their questions selected, and who answer them correctly. The prize element is present. Moreover, a drawing or selection of the names of patrons fortunate enough to participate is made and the chance element occurs. The third element necessary to constitute a lottery, namely, the furnishing of consideration directly or indirectly by those participating, is also present. See Cole vs. The State, supra.

Consequently, it is the opinion of this department, and you are respectfully advised, that a theatre operator conducting the scheme set forth in your letter would be guilty of operating a lottery as prohibited by Article 654 of the Penal Code of Texas, 1925.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Walter R. Koch
Assistant

By

JDS:LW

James D. Smullen

APPROVED  FEB. 2, 1940

ATTORNEY GENERAL OF TEXAS