

# THE ATTORNEY GENERAL

## OF TEXAS

**GERALD C. MANN**
XXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

**AUSTIN 11, TEXAS**

Honorable John R. Shook
Criminal District Attorney
San Antonio, Texas

Dear Sir:

Opinion No. 0-3990

Re: Whether or not certificate scheme
of newspaper is a lottery, and re-
lated questions.

     Your request for an opinion of this department has been
received and considered. We quote from your request:

> "We enclose herewith certain copies of issues
> of the San Antonio Light and it is our information that
> the scheme complained of is substantially as follows:

> "This newspaper has undertaken to distribute,
> through its agents, certain certificates, gratis, to any
> and all persons desiring same, whether they be sub-
> scribers of such newspaper or not, a facsimile of which
> certificate appears upon page 4-A of the edition of Sep-
> tember 5, 1941, enclosed herewith. A drawing is held
> every day and, if the number of the holder of a certifi-
> cate is drawn in such drawing, upon proper presentation
> of such certificate, such holder is entitled to receive a
> prize. The method is fully explained in the enclosed
> newspaper.

> "Under the above facts, would the president,
> general manager, circulation manager and other em-
> ployees and agents of such newspaper be guilty of a vio-
> lation of Article 654 of the Penal Code of the State of
> Texas?

> " * * *.

> "It is our information that the parties making
> this inquiry are also desirous of ascertaining whether
> or not an injunction suit will lie to restrain the opera-
> tion of this enterprise, and if so, in whose name and by
> whom such injunction suit shall be brought and main-
> tained.

" * * *.

"It is our information that the publisher of this newspaper is a private corporation. * * * .

" * * *. Under the above statement of facts, will an action by quo warranto or injunction lie in behalf of the State on relation of the Attorney General against a private corporation violating the provisions of Section 47, Article 3 of the Constitution of Texas, or Article 654, Penal Code of Texas ?"

As a supplement to the facts submitted in your inquiry, we desire to quote from one of the newspaper exhibits which you have enclosed. Said exhibits show the following:

"DO YOU HOLD A WINNING NUMBER ?

$2400.00 CASH GIVEN AWAY!

"Look at the number on your certificate and check it with the comic on this page bearing the same name. If you hold one of these winning numbers, bring it within two days to the San Antonio Light and receive your Golden Opportunity cash award.

"$25.00 FIRST PRIZE
$75.00 IN ADDITIONAL CASH PRIZES

"If you do not hold a winning number today--KEEP YOUR CERTIFICATE as it may be a winner another day.

"100.00 CASH PRIZES DAILY

FOR THE NEXT 23 WEEK DAYS!

" * * *.

"HOW TO WIN

"Each week day until $2400.00 in cash has been given away, 39 numbers will be printed above six comics that appear in The San Antonio Light daily. Compare number of your Certificate with those that are published daily in The Light and posted at the following places: The display window of The San Antonio Light, Broadway and Fifth Street, and all suburban theatres. You May Win Any Day. Save Your Certificate.

"READ THE RULES

"To win, the number of your Golden Opportunity Certificate must be printed above the corresponding comic in The San Antonio Light. Holders of winning Certificates must present the certificate to The San Antonio Light, Broadway at Fifth Street, no later than two days after the number has been published. Prize awards will be made between the hours of 8:30 a.m. and 4 p.m.

"SPECIAL NOTICE

"It is not necessary to be a regular reader of The San Antonio Light to participate in the awards. Copies of The Light may be seen without charge at the San Antonio Light office. Winning numbers will be posted in the lobby of the following theaters: Broadway Theater, Uptown Theater, Harlandale Theater, Highland Park Theater. First winning numbers will be published daily on the Comic page of The Light beginning Friday, September 5, 1941, and until further notice.

"IMPORTANT TO REMEMBER

"All Golden Opportunity Certificates are labeled with one of six comics, namely, BRINGING UP FATHER, THE NEBBS, TILLIE THE TOILER, SNUFFY SMITH, BLONDIE, SKIPPY.

"Winning numbers will appear above these comics beginning Friday, September 5. To win a cash prize, the certificate you hold must bear the name of one of the above comics and have the same number that appears above that particular comic."

Section 47 of Article III of our Texas Constitution provides:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Pursuant to the mandate of the Constitution our Legislature enacted Article 654 of the Penal Code of the State of Texas, which provides:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

Our Texas Supreme Court has held in the City of Wink vs. Griffith Amusement Co., 100 S.W. (2d) 695, that Article 654 of the Penal Code, supra, applies only to lotteries and does not include "gift enterprises" and "other evasions involving the lottery principle."

It may be generally said that our Texas Courts, both Civil and Criminal, have clearly laid down the principles of a lottery to be: (1) a prize or prizes; (2) the award of distribution of the prize or prizes by chance; (3) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. See City of Wink vs. Griffith Amusement Co., supra; Cole vs. State, (Ct. Crim.App.) 112 S.W. (2d) 725; Smith vs. State, (Ct. Crim. App.) 127 S.W. (2d) 297; Featherston vs. Independent Station or Association, (Ct. Civ. App.) 10 S.W. (2d) 124.

That the first two enumerated elements are present in the plan or scheme submitted by you could not be seriously questioned. We now proceed to discuss whether the third element of consideration is present.

In considering whether a plan or scheme is a lottery the court "will inquire not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited or if it has the element of chance." Cole vs. State, supra.

Looking to the very nature of the plan or scheme under consideration it must be obvious that the real purpose of the plan is to increase or aid the newspaper's business by the distribution of prizes in money, by chance, and to induce persons to purchase or subscribe to the newspaper, the inducement of a prize to certain lucky holders of certificates being predominant. We think it could easily be said that such a plan would inure to the benefit and advantage of the newspaper in several ways. It is well known that a newspaper's scope is gauged by its circulation more than any other single factor. Its effectiveness and desirability as a medium of advertising, from which it derives its principal income, depends principally upon its circulation. No doubt the plan would create and stimulate considerable good will for the newspaper in the eyes of many people who would be more impressed with the opportunity of winning a cash prize through chance and the generosity of the management than the news content of the newspaper. As was said by Judge Graves in the case of Cole

vs. State, supra, on motion for rehearing, "after all it is but a scheme in our judgment, for the purpose of distributing prizes by chance." Our opinion, concerning the effect and design of the plan or scheme under consideration, is well expressed in the words of Judge Lattimore in Cole vs. State, supra, quoting with approval from State vs. Danz, 140 Wash. 546, where he said: "Manifestly, it was the plan and purpose of the appellants to get additional money by putting on the chance drawing."

Insofar as the plan or scheme is concerned we think it is immaterial that some persons might possibly receive a prize without buying a paper or being a subscriber. City of Wink vs. Griffith Amusement Co., supra; Cole vs. State, supra. Those putting on the plan, or using and promoting the scheme, under the facts submitted, would doubtless be operating a lottery regardless of whether some of the certificates or chances were obtained by persons who in fact obtained them without giving a direct or indirect consideration. Purchases or subscribers to the paper would certainly be considered to have paid at least an indirect consideration for the privilege of participating in the lottery. See City of Wink vs. Griffith Amusement Co., supra; Cole vs. State, supra. We think this means of a free distribution is obviously designed as an evasion or attempted evasion of the lottery laws and is more theoretical than real. To hold otherwise would, in our opinion, make a mockery of our lottery laws and sanction the operation of lottery by the mere imposition of an artifice in the nature of a fictional technicality in the law which is contrary to the spirit of Article III, Section 47 of the Texas Constitution.

From what we have said, it follows, that we find all of the elements of a lottery exist in the newspaper plan or scheme submitted in your request. You are, therefore, advised that in our opinion the plan or scheme of the San Antonio Light newspaper, is a lottery and is prohibited by Article III, Section 47 of the Constitution and Article 654 of the Penal Code of the State of Texas.

We find no provision made in Article 654 of the Penal Code of the State of Texas, nor any statute that is applicable, which provides for the prosecution and punishment of a corporation for operating a lottery. We think the rule is applicable to the corporation that has been laid down by the Court of Criminal Appeals in Judge Lynch International Book & Publishing Company vs. State, 84 Tex. Crim. R. 445, 208 S.W. 526, where it was said: "And we call attention to the fact that Section 6 of the Act * * *, which is the one containing the penalty clause, only mentions 'any person' as punishable and thus, in a criminal statute and prosecution, must be a natural person and omits reference to any firm or corporation. * * *."

With reference to the criminal liability of the officers and agents of the corporation, under the facts submitted by you, for violating Article 654 of the Penal Code of Texas, we desire to quote from 19 Corpus Juris Secundum, Section 931, Pages 363-364, which reads:

"Officers, directors, or agents of a corporation participating in a violation of law in the conduct of the company's business may be held criminally liable individually therefor. So, although they are ordinarily not criminally liable for corporate acts performed by other officers or agents, and at least where the crime charged involves guilty knowledge or criminal intent, it is essential to criminal liability on his part that he actually and personally do the acts which constitute the offense or that they be done by his direction or permission. He is liable where his scienter or authority is established, or where he is the actual present and efficient actor. * * *."

See also 13 American Jurisprudence, Pages 1027-1030, inclusive.

In this same connection we quote from 12 Texas Jurisprudence, Page 279, which reads, in part, as follows:

"An illegal act cannot be justified by an order from superior authority no matter how high the source from which it emanates. The fact that a person acts as agent for another or in obedience to orders of his employer in committing an offense is no excuse, where he has knowledge of the principle or employer's criminal intent and the fact that one who aids or assists another in those things which make out guilt under the law does so for accommodation or for pay does not render him guiltless. * * *."

We are, therefore, of the opinion that in order for the officers or agents of the corporation to be liable to prosecution under Article 654, supra, for operating a lottery, it must be shown that said officer or agent has personally participated with the corporation in the establishment of the lottery or that such acts were done by and through such officer or agent's direction or permission. This would clearly involve facts which are not before us and we cannot, for that reason, answer your first question specifically.

Since we have held that the plan or scheme under consideration is a lottery then it follows that it can be abated and enjoined as a nuisance by an injunction suit instituted under and authorized by Articles 4664-4667, inclusive, of Vernon's Civil Statutes of Texas. The State vs. Robb & Rowley United, (Civ.App.) 118 S.W. (2d) 917; Robb & Rowley United, Inc., et al vs. State, (Civ.App.) 127 S.W. 221; Aetna Club, et al vs. State, (Sup.Ct.) 199 S.W. 1090; also our Opinion No. 0-2286. Under the above cited statutes and authorities, suit may be instituted in behalf of the State by either the Attorney General, or the District or County Attorney. In Featherstone vs. Independent Service Station Association, Inc., supra, it was held that a merchant who was injured by the action of his competitors

in conducting a lottery in violation of Article 654, supra, could maintain an action in a court of equity and have the operation of such lottery enjoined. Your second question is answered accordingly.

We now consider your third or last question.

Article IV, Section 22 of the Texas Constitution, provides:

"The Attorney General * * * shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and, from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power * * * not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, * * *."

Pursuant to the above quoted constitutional provision, the Legislature enacted the quo warranto statutes, being Title 111 of Vernon's Civil Statutes of Texas.

In the City of Wink vs. Griffith Amusement Co., supra, Judge Cureton said, with reference to the City of Wink:

"It cannot maintain its cross-action or suit for injunction for two reasons; first, because the ordinance which it seeks to enforce by injunctive relief is void; and, second, because the right to enjoin a corporation for violating the public policy of the State as an abuse of its corporate franchise has not been confided to the plaintiff in error, but to the Attorney General. Constitution. Article IV, Section 22."

A corporation may in the course of maintaining a nuisance likewise violate its charter. Aetna Club, et al vs. State, supra.

We quote from State vs. Waller, (Civ.App.) 211 S.W. 322, (writ of error dismissed):

"It is settled in Texas that under the provisions of the quo warranto statutes, (Revised Statutes of 1911, Article 6398) that a proceeding to forfeit the charter of a corporation can only be instituted by the Attorney General of the State, and that the attempt to confer such power on the District or County Attorney is in violation of Article IV,

Sec. 22 of the Constitution. State vs. Railway, 89 Tex. 562, 35 S.W. 1067; Brady vs. Brooks, 99 Tex. 379, 89 S.W. 1052; Oriental Oil Co. vs. State, 135 S.W. 722. * * *."

We have held that the corporation is, in our opinion, conducting a lottery which is condemned by the Constitution of this State and therefore contrary to public policy. It follows, therefore, that an injunction suit could be maintained by the Attorney General against said corporation to enjoin it from violating the public policy of the State as an abuse of its corporate franchise. City of Wink vs. Griffith Amusement Co., supra. We are also of the opinion that, under the facts submitted by you, a quo warranto proceeding will lie in behalf of the State on relation of the Attorney General against said corporation. Your third, and last question is answered accordingly.

We trust that we have fully answered the questions submitted in your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Harold McCracken
Harold McCracken
Assistant

APPROVED OCT 4, 1941

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

HM:RS/cm

APPROVED
Opinion
Committee

By /s/ BWB
Chairman