

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 23, 1952

Hon. Odis Tomachefsky
County Attorney
Washington County
Brenham, Texas

Opinion No. V-1564.

Re: Legality of a drive-in
theater's conducting a
progressive drawing
with coupons obtained
free from sponsoring
merchants.

Dear Sir:

You have requested of this office an opinion
concerning the legality of a certain sales promotion
enterprise conducted by a local drive-in theater, in
view of the statutory prohibition against lotteries.
A representative of the theater has described the scheme
thus:

"We, the Starlite Drive-In Theatre,
Brenham, Texas, propose to give away a free
12-day vacation trip for two people to
California, through an advertising program
to be accomplished as follows:

"We are to select 12 local business firms
to participate in the giving away of this va-
cation trip, whereby the merchants are to give
away chances on a no-purchase-required basis
to obtain these coupons. They are free.

"People receiving chances on this trip
may deposit the coupons in a hopper located
in the concession stand of the Starlite Theatre
or a hopper at the box office of the theatre,
or they may be mailed direct to said theatre.
No theatre admission ticket is necessary nor
does the coupon holder have to be present to
win.

"We plan to select 30 names on a certain
night of each week. These 30 names to qualify
for the final giving away of the trip some
12-weeks after the beginning of the program.
After the selection of these 30 names, the
coupons not qualifying for the grand hopper will

be destroyed after each weekly progressive selection.

"At the end of 12 weeks, we will have 360 coupons from which we will make our final selection. We will select the winner by drawing one of these 360 coupons in the grand hopper. This person does not have to be present to win the trip."

Your request further states:

"It is my further understanding, with respect to the above proposition as presented to my office by the manager of the local Drive-In Theatre, that the manager of said theatre is to select 12 local business firms to participate in this program by giving away tickets or chances at their local establishment. These tickets or coupons are given away on a non-purchase basis to anyone who might enter their store. It is, however, my further understanding that these merchants that are to participate in this program are to pay to the manager of the theatre a certain fee to help in defraying the cost of advertising this program. Also, that the theatre will pay a fee to the promoter of this scheme or program, who will set up the program for the theatre and the merchants participating therein.

"It might be further pointed out that it is my understanding that, according to the program outlined, the parties obtaining the tickets from the various merchants involved in this program can deposit the tickets either by personally dropping the same in one of the boxes located at the theatre or by mailing the same direct to the theatre."

Section 47 of Article III of the Constitution of Texas directs the Legislature to enact laws prohibiting the establishment of lotteries and gift enterprises in this State. Pursuant to this mandate the Legislature enacted Article 654, Vernon's Penal Code, which provides:

"If any person shall establish a
lottery or dispose of any estate, real or
personal, by lottery, he shall be fined
not less than one hundred nor more than
one thousand dollars; or if any person
shall sell, offer for sale or keep for sale
any ticket or part ticket in any lottery,
he shall be fined not less than ten nor
more than fifty dollars."

A lottery has been judicially defined as a
scheme for the distribution of prizes by lot or chance
among persons who have paid or who have agreed to pay
a valuable consideration for the opportunity to win the
award. City of Wink v. Griffith Amusement Company,
129 Tex. 40, 100 S.W.2d 695 (1936); 54 C.J.S. 843,
Lotteries, Section 1; 28 Tex. Jr. 409, 410, Lotteries,
Section 2. Thus it is apparent that every lottery con-
sists of three essential elements, as follows: (1)
prize, (2) chance, (3) consideration.

The elements "prize" and "chance" are clearly
present in the plan described in your request. There-
fore our inquiry necessarily will deal with the presence
or absence of the element of consideration.

The Texas courts have dealt with this question
numerous times in the consideration of the various
"Bank Night" contests held by motion picture theaters.
Almost without exception these games were held to be
lotteries despite the fact that chances for the prize
were distributed to large numbers of persons who did
not hold theater tickets, as well as to patrons of the
theaters. The distribution of "free" chances was con-
sidered but a subterfuge which would not have the effect
of removing the element of consideration from an other-
wise illegal scheme. City of Wink v. Griffith Amusement
Company, 129 Tex. 40, 100 S.W.2d 695 (1936); Cole v.
State, 133 Tex. Crim. 548, 112 S.W.2d 725 (1938); Robb
& Rowley, United v. State, 127 S.W.2d 221 (Tex.Civ.App.
1939); State v. Robb & Rowley, United, 118 S.W.2d 917
(Tex.Civ.App. 1938). See also Att'y Gen. Op. V-1483 (1952).

A number of other sales promotion enterprises
in which the participating merchants distributed chances

for prizes among their customers have been declared lotteries, even though many of the chances were also distributed in various ways to non-customers. Feather-stone v. Independent Service Station Association, 10 S.W.2d 124 (Tex. Civ. App. 1928). See also Att'y Gen. Ops. O-2843 (1940) and V-1420 (1952).

In Smith v. State, 136 Tex. Crim. 611, 127 S.W.2d 297 (1939), the Court of Criminal Appeals con-sidered a promotion scheme known as "Noah's Ark," which is quite similar in many respects to the one des-cribed in your request. There a number of merchants paid license fees to a promoter who distributed cards to the merchants. The merchants distributed these cards to persons entering their stores, some in exchange for box tops and other evidences of purchases, many others to persons who did not make purchases at the participat-ing establishments. These cards of course were chances for a prize. The court held that this plan constituted a lottery. The license fees paid by the merchants con-stituted consideration moving indirectly from the con-testants to the promoter, and the merchants received their consideration in the form of advertising and in-creased patronage.

The most recent decision by the Court of Crim-inal Appeals is Brice v. State, 242 S.W.2d 433 (Tex. Crim. 1951). There the general public was invited to register for a contest held at the opening of a new retail store. None of the chances for the awards were distributed on the basis of purchases from the donor, and apparently no favoritism was shown the customers. However, the merchant did not pay license fees or any other form of consideration to a promoter. It was held that such a scheme does not violate Article 654, V.P.C., and that the element of consideration was not added by the mere prospect of increased patronage. Previous opinions of this office are in accord with this result. Att'y Gen. Ops. O-2309 (1940), V-167 (1947).

We agree with your conclusion that Smith v. State, supra, presents the closest analogy to the plan under consideration here. Although the participants may receive chances on a no-purchase-required basis, you have stated that the merchants paid certain fees to the theater which conducts the drawing. The theater

in turn pays a fee to a promoter to set the plan in
operation at the theater and at the stores. This con-
stitutes consideration moving indirectly from the par-
ticipants to the promoter, and it is sufficient to
bring the scheme within the statutory prohibition.
In this respect, the following language in Smith v.
State, supra, at page 298, is particularly significant:

> "We think it clearly appears herein
> that appellant received a fee from the 145 merchants
> and dealers who paid him a license fee and joined
> his 'Noah's Ark' organization, and that the
> payment of such fee operated as a consideration
> for the entering into the drawing contest of all
> persons who came to such dealer's place of business
> and requested a card or a stamp for the purpose
> of entering this contest. That this license
> fee was the payment of a consideration moving
> indirectly from the contestant and directly
> to the supervisor or owner of this scheme.
> . . ."

It is difficult to ascertain from descriptive
literature alone the exact nature of any given scheme
conducted on the lottery principle. The written des-
cription might differ materially from the manner in
which the plan is actually carried out. However, it
appears from the description of the plan in question
that the element of consideration is present, and
therefore we agree with you that the scheme is a
lottery within the contemplation of Article 654,
Vernon's Penal Code.

## SUMMARY

A retail sales promotion plan in
which prizes are distributed at a motion
picture theater to persons who have obtained
chances either at the theater or at one of

twelve participating retail stores is a
lottery and prohibited by Article 654, V.P.C.,
where the merchants pay a fee to the theater,
which in turn pays another fee to the promoter
of the plan.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

William S. Lott
State Affairs Division

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

By _Calvin B Gerwood_

Calvin B. Gerwood, Jr.
Assistant

cbg/mlh