

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 11, 1957

*Overruled by*
*WW-652*
*where conflicts*

Honorable E. James Kazen
District Attorney
49th Judicial District
Laredo, Texas

Opinion No. WW-222

Re: Whether a game called "Play
Marko" is a lottery.

Dear Mr. Kazen:

You have requested an Opinion as to whether a game called "Play Marko" is in violation of the Texas Penal Laws. Honorable Joseph H. Mims, District Attorney, Midland, Texas, also requested an Opinion as to the legality of "Play Marko." This Opinion is, therefore, being written in response to these requests.

As I understand the game "Play Marko", as described in your request and in the advertising materials which each of you forwarded, it is similar to the well-known game of "Bingo," although played on television.

A copy of the contract to be entered into between a television station and local merchants or other advertising firms was forwarded. This contract provides that the television station sells a quantity of the small cards upon which is printed the letters "M A R K O". There are five numbers in a vertical row beneath each of these letters. The contract provides that these "Marko" cards will then be distributed by the retail merchant or advertiser who buys them from the television station to those who ask for them without charge and with no requirement of a purchase being made.

During each week the television station provides time for the playing of the game "Marko". A person in the station studio takes balls from a container. Upon each ball is printed one of the letters, "M", "A", "R", "K", or "O", and a number. This letter and number is then shown on the television screen. If the viewer's card has a matching number and letter, the number is covered with an object. When a viewer has covered five numbers in a row, either horizontally, diagonally, or vertically, he has what is called a "Marko". He then calls the television station to have his card verified against a master card in the studio, and if verified as to having a "Marko", he is declared the winner of that game. The number of games played is determined by the amount of time given to that particular program by the television station. New cards may or may not be distributed each week. The television station agrees to furnish prizes to the winners.

Two questions are asked, being, Does the game "Play Marko" violate the Penal Statutes of Texas:

1. When a prize is given to the winner by the television station?

2. When the television station requires that the first person getting a Marko must then answer a so-called "skill" question correctly as a condition precedent to being declared a winner and eligible to receive a prize?

Section 47 of Article III of the Constitution of Texas provides:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Article 654, Vernon's Penal Code, provides:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

Since a lottery is not defined in the statutes, to determine whether a particular scheme or game is a lottery, it is necessary to examine the court decisions. No Texas decision nor prior Attorney General's Opinion can be found on the exact game you describe.

It is well settled that a lottery consists of three essential elements, namely: (1) a prize or prizes, (2) the award or distribution of the prizes or prizes by chance, and (3) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. Cole v. State, 133 Tex. Crim. 548, 112 S.W. 2d 725 (1938); City of Wink v. Griffith Amusement Company, 129 Tex. 40, 100 S.W. 2d 695 (1936); Smith v. State, 136 Tex. Crim. 611, 127 S.W. 2d 297 (1939); Brice v. State, 242 S.W. 2d 433 (Tex. Crim. 1951).

Many courts have taken judicial notice of the countless varieties of schemes which have been "invented" attempting to circumvent the lottery laws. It has been aptly stated recently

by the United States Supreme Court in <u>F.C.C. v. American Broad-</u>
<u>casting Co.</u>, 347 U.S. 284 (1954):

"Enforcing such legislation has long been a dif-
ficult task. Law enforcement officers, federal and
state, have been plagued with as many types of lotter-
ies as the seemingly inexhaustible ingenuity of their
promoters could devise in their efforts to circumvent
the law. When their schemes reached the courts, the
decision, of necessity, usually turned on whether the
scheme, on its own peculiar facts, constituted a lot-
tery. So varied have been the techniques used by pro-
moters to conceal the joint factors of prize, chance,
and consideration, and so clever have they been in ap-
plying these techniques to feigned as well as legitimate
business activities, that it has often been difficult
to apply the decision of one case to the facts of an-
other."

### Question No. 1, where no skill question is asked.

It seems clear that the essential elements of "prize"
and "chance" are present. The difficult question for determina-
tion concerns the element "consideration." ". . .(3) the payment
either directly or indirectly by the participants of a consider-
ation for the right or privilege of participating."

As noted, the merchant or advertiser buys the Marko
cards, and in turn, distributes them free of charge. The public
can secure these cards only from those advertisers who have pur-
chased them. Likewise, the advertisers can get the cards only
from the television station that has purchased the franchise
right from the owner to play this game over its station. The
consideration for the game is present, although it does not move
directly from the player. The next question is whether it moves
indirectly from the player. It is believed that this question
is answered in <u>State v. Smith</u>, 136 Tex. Crim. App. 611, 127 S.W.
2d 297 (1939). This case involved a scheme known as "Noah's
Ark." Here a number of merchants paid a license fee to a pro-
motor and received cards to be distributed to customers. These
cards had ten blank spaces upon which were to be placed ten
stamps. The cards were distributed to those who would ask for
them upon exchanging a wrapper or a facsimile thereof from mer-
chandise similar to that sold in the store. There was no re-
quirement that the customer buy anything before receiving a
card. The stamps were distributed in the same manner. When ten
stamps had been placed upon a card, the customer would then
sign his name and drop it into a large container. At designated
times a drawing would be had and the person whose card was drawn
would receive a prize paid for by the promoter. The argument
that this was not a lottery was based on the fact that no con-

sideration passed from the donor of the prize to the recipient. In refuting this argument the court, speaking through Judge Graves, made this statement:

> "Bearing in mind that consideration may move either directly or indirectly from the person receiving the prize to the donor thereof, we are impressed with the fact that the consideration for the entering into such a contest for this prize came indirectly from the hands of the merchant who joined the 'Noah's Ark' and paid appellant (promoter or donor of the prize) a license fee therefor, thus furnishing the consideration for all the participants who entered such contest from his store or place of business. . . . Moving indirectly, it may be for the benefit of the contestant, through the merchant or dealer who also received a benefit therefor, presumably at least in the advertising that he was obtaining as well as playing upon the natural cupidity of mankind to obtain something for nothing, and thus moving it completes the trinity of a prize arrived at by chance, and based upon a consideration, not only given by the contestant but received by the donor."

On motion for rehearing, Judge Krueger gave additional reasons as to why there was consideration, using language as follows:

> "It is quite clear to us from the record that each business establishment which contributed a certain amount of money in order to join this 'Noah s Ark' and by whom the prize is paid, receives a card or cards and stamps symbolic of some animal. These cards are furnished to the merchant or business establishment, and by them distributed to customers or others who come to the establishment. . . . It is obvious that the dealer, merchant or business establishment not contributing to the prize, did not receive any card or stamp for distribution. Consequently, parties desiring to secure a chance at the prize would necessarily have to go to such merchant or business establishment as had contributed to the general fund. As a result, the good will and patronage of the person favored with the cards is secured. This patronage, whatever it may be, is given in exchange for cards and stamps, which is an indirect benefit to the operator of the scheme, and enables him to continue his game of chance. It is a bait handed out to the gullible as an inducement to become customers of the dealers or merchants subscribing to the plan."

Applying the facts of the Smith case to the game of Marko, we find that the merchant who buys the Marko cards from the television station for distribution to the customers who come to the store is furnishing a consideration for all those who play the game.

The Smith case is directly in point. If the scheme in the Smith case was a lottery in violation of the Texas law, then the scheme involved in "Play Marko" is also a lottery in violation of the Texas law. The answer to Question No. 1 is, therefore, the game "Play Marko" is a lottery and violates Article 654 (V.P.C.).

In reaching this conclusion, we are not unaware of the recent decision in Caples Co. v. United States, 243 F. 2d 232 (U.S. Ct. App. D.C. 1957). In this case, the Federal Communications Commission had issued an order declaring that Play Marko was a lottery. On appeal from this ruling, the Court of Appeals reversed the F.C.C., holding that the essential element "consideration" was lacking, basing its decision upon F.C.C. v. American Broadcasting Co., 347 U.S. 284, 75 S. Ct. 593, 98 L. Ed. 699 (1954). In our opinion, the dissenting opinion of J. Danaher in the Caples case, in which he distinguished Marko from the type of program involved in the American Broadcasting Co. case, is more consistent with the element of consideration as interpreted by the Texas courts in lottery cases.

The possibility that the game Marko might be held to be a lottery by State law is recognized in the advertising brochure of the Caples Company (owners of the copyright game "Play Marko"), where it states, "Marko is a legal prize show, and as such may be broadcast on any station where state laws are in conformity with Federal laws." (Emphasis added).

### Question No. 2, where a skill question is asked.

An alternative method of playing Marko requires that the person who first gets a Marko (5 objects in a row on his card) must then correctly answer a skill question before finally being declared a winner. The question then is whether the requirement of the correct answer to the skill question removes the element of chance from Marko?

No Texas case directly in point can be found. There have been only a few cases involving an alleged lottery in which the Texas court held that the game or scheme was not a lottery. See Brice v. State, 242 S.W. 2d 433 (Tex. Civ. App. 1951). Other than the type of promotional scheme used in the Brice case (merchandise given to registrants at the opening of a new store, with no requirements precedent for registration), the Texas courts have been quick to condemn promotional schemes as a lottery.

In determining whether a particular scheme is, or is not, a lottery, the court looks at the plan in its entirety and to the basic idea upon which the game is based. However, the primary object of the court's examination is whether the element of chance is present. The Court in City of Wink v. Griffith Amusement Co., supra, approved the following statement from another jurisdiction, "The ingredient of chance is, obviously, the evil principle which the law denounces and will eradicate, however it may be clothed, or however it may conceal itself in a fair exterior." The Court of Criminal Appeals has adopted similar language in Cole v. State, supra, at page 727, where it stated, "The court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited, or if it has the element of chance."

In line with the tests used by the courts in determining the true nature of the game, it is proper to examine statements of the promoter of the game. Mr. Mims forwarded an advertising brochure of the Caples Company, Chicago, Illinois, which states that this company is owner of the copyright "Play Marko." The Marko cards apparently are furnished by the Caples Company for a consideration paid by the television stations. This advertising brochure contains the following remarks which are pertinent to our inquiry: "Marko is a prize give away program; the bigger the prizes, the more popular the program with the viewers"; "Grand Prizes are very effective. An automobile, a big vacation trip or some other major prize will increase interest and audience . . ."; "Play Marko is a game of chance. This is its appeal . . . the fact that every player has an equal chance to win"; "Play Marko is simply old fashioned Lotto or Bingo produced as a television show, without cost or consideration to the player at home."

Even with a question of skill, there is no doubt that those who become eligible to answer the skill question are determined by an element of chance. No Texas lottery case can be found involving a mixed game of chance and skill. In Adams v. Antonio, 88 S.W. 2d 503 (Civ. App. 1935, error ref.), the question involved was whether a marble table was one of skill or one of chance. Justice Alexander noted that Article 619 (V.P.C.), condemning gaming devices, made no distinction between games of chance or games of skill, and made this comment, "However, if a decision of this question be necessary to a solution of the case before us, it is our opinion from the evidence that the element of chance, as the game is played, so predominates over the element of skill as to make the game essentially one of chance and not of skill."

In Hoffman v. State, 219 S.W. 2d 539 (Civ. App. 1949), the game sought to be condemned consisted of a board with holes cut into it with the player throwing different colored balls into

this surface. The object of the game, like Marko and Bingo, was to line up the balls in a row, vertically, horizontally or diagonally. The contention was made that this was a game of skill, since the players developed skill in the throwing of the ball onto the surface. In condemning the game as one of chance, the court emphasized Article III, Section 47, of the Texas Constitution as follows, "The legislature shall pass laws prohibiting the establishment of lotteries . . . <u>or other evasions involving the lottery principle.</u>" (Emphasis by the court). Continuing, the court said, "Our constitutional provisions against lotteries, 'or other evasions involving the lottery principle' is strongly worded, the same or similar language appearing in all preceding Constitutions; being uniformly construed 'with a view to remedying the mischief intended to be prevented, and to suppress all evasions for the continuance of the mischief, 54 C.J.S. Lotteries, Section 19, p. 862." The court concluded as follows: "That we believe it is almost impossible for the most ingenious and subtle mind to devise any scheme or plan, <u>short of a gratuitous distribution of his own property</u>, that will not be held by the courts of this State as in violation of the foregoing statute." (Emphasis by the court.)

Prior Attorney General's Opinions have discussed at length the schemes involving mixed elements of chance and skill in the determination of a winner of a contest. In Attorney General's Opinion No. V-238, June 7, 1947, it was held that a cooperative advertising plan known as "Bonanza" was a lottery. Opinion No. V-1483, July 18, 1952, discussed the legality of "Quiz Bank" or "Quiz Shows". This opinion shows the inherent difficulty in determining whether chance or skill predominates in any particular scheme. In Opinion No. O-1789, December 22, 1939, the quiz show "Dr. I. Q." was held not a lottery, the winners being determined solely by their answers based on skill or prior knowledge. In Opinion No. V-544, April 13, 1948, it was held that whether the "Bank of Knowledge" was one of skill or one of chance would depend upon the type of questions asked, whether the answers to the questions asked would be based upon prior knowledge or upon guess.

From a review of the analogous Texas cases, the reasoning used by the courts in the various decisions concerning lotteries, and based upon prior Opinions of this office, in our opinion, the game of "Play Marko", even though the ultimate winner would be required to answer a skill question, is primarily a game of chance, and is, therefore, a lottery, and violates the constitutional provisions and statute prohibiting lotteries.

## SUMMARY

The game "Play Marko" is a lottery in violation of Section 47 of Article III, Constitution of

Texas, and Article 654, V. P. C., because it involves the elements of (1) giving a prize, (2) based on chance, and (3) the payment of a consideration for the privilege of participating in the game; and even though the winner of the game must answer correctly a "skill" question before receiving a prize, it is still essentially based on chance, and is a lottery.

Yours very truly,

WILL WILSON
Attorney General of Texas


By s/Edwin P. Horner
Assistant

EPH:cm:wc


APPROVED:

OPINION COMMITTEE:

George P. Blackburn, Chairman

John Reeves

E. M. DeGeurin

REVIEWED FOR THE  ATTORNEY GENERAL
BY:
James N. Ludlum